UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CATO INSTITUTE, | |
| Plaintiff, | |
| v. | Civil Action No. 1:19-cv-00047-ABJ |
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION; JAY CLAYTON, in his official capacity as Chairman of the U.S. Securities and Exchange Commission; and VANESSA A. COUNTRYMAN,[*] in her official capacity as Acting Secretary of the U.S. Securities and Exchange Commission, | |
| Defendants. | |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

---

[*] Vanessa A. Countryman was named Acting Secretary of the U.S. Securities and Exchange Commission effective March 11, 2019, when former SEC Secretary Brent J. Fields stepped down.

i

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 3

    A.   The Commission adopted a policy announcing that it would not negotiate consent judgments that allowed defendants to deny the allegations in the complaints against them... 4

    B.   Applying this policy, the Commission has entered into consent judgments with no-deny provisions..................................................................................................................... 5

    C.   Cato alleges that it seeks to publish or otherwise facilitate public denials of allegations in settled Commission enforcement actions. .......................................................... 8

    D.   Cato challenges the application of the Commission's policy on First Amendment Grounds ...................................................................................................................... 9

ARGUMENT ..................................................................................................................... 9

   I.   This Court lacks subject matter jurisdiction. ...................................................... 9

    A.   Cato lacks standing to challenge consent judgments entered into by third parties not before the Court. ....................................................................................................... 10

        *1.*   *Cato does not have Article III standing.* ................................................... 10

        *2.*   *Prudential standing bars Cato's complaint.* ............................................ 13

    B.   The Court also lacks jurisdiction because Cato asserts unripe claims that improperly seek to invade the jurisdiction of other federal courts. ........................................... 15

  II.   Cato's Complaint Should Be Dismissed for Failure to State a Claim ............................. 20

    A.   The settling defendants waived their First Amendment rights. ..................................... 21

    B.   The no-deny provisions are consistent with the First Amendment. .............................. 25

CONCLUSION.................................................................................................................. 30

# TABLE OF AUTHORITIES

## CASES

*Abbott Labs. v. Gardner*,
    387 U.S. 136 (1967) ........................................................................................ 16, 19

*Alley v. Dep't of Health & Human Servs.*,
    590 F.3d 1195 (11th Cir. 2009) ............................................................................ 19

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .............................................................................................. 20

*Ass'n of Flight Attendants-CWA v. Huerta*,
    785 F.3d 710 (D.C. Cir. 2015) ............................................................................... 5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .............................................................................................. 20

*Blue Chip Stamps v. Manor Drug Stores*,
    421 U.S. 723 (1975) .............................................................................................. 14

*Board of Trade v. SEC*,
    883 F.2d 525 (7th Cir. 1989) ................................................................................ 28

*Bond v. Utreras*,
    585 F.3d 1061 (7th Cir. 2009) .............................................................................. 25

*Boykin v. Alabama*,
    395 U.S. 238 (1969) .............................................................................................. 21

*C.F. Folks, Ltd. v. DC Jefferson Bldg., LLC*,
    308 F. Supp. 3d 145 (D.D.C. 2018) .................................................................... 16

*Chamber of Commerce v. EPA*,
    642 F.3d 192 (D.C. Cir. 2011) .............................................................................. 12

*Citizens for a Better Env't v. Gorsuch*,
    718 F.2d 1117 (D.C. Cir. 1983) ............................................................................ 28

*Cook v. City of Chicago*,
    192 F.3d 693 (7th Cir. 1999) ................................................................................ 12

*Covad Communications Co. v. Bell Atl. Corp.*,
    407 F.3d 1220 (D.C. Cir. 2005) .............................................................................. 6

*Davies v. Grossmont Union High Sch. Dist.*,
930 F.2d 1390 (9th Cir. 1991) ...................................................................22

*Democratic Nat'l Comm. v. Republican Nat'l Comm.*,
673 F.3d 192 (3d Cir. 2012).........................................................................21

*Deutsche Bank Nat'l Tr. Co. v. FDIC*,
717 F.3d 189 (D.C. Cir. 2013) .............................................................13, 14

*Devia v. NRC*,
492 F.3d 421 (D.C. Cir. 2007) ....................................................................15

*D.H. Overmyer Co. v. Frick Co.*,
405 U.S. 174 (1972).....................................................................................22

*Doe v. Marsh*,
105 F.3d 106 (2d Cir. 1997).........................................................................21

*Duke Power Co. v. Carolina Envtl. Study Group, Inc.*,
438 U.S. 59 (1978).......................................................................................14

*Elk Grove Unified Sch. Dist. v. Newdow*,
542 U.S. 1 (2004).........................................................................................14

*Erie Telecomms. v. City of Erie*,
853 F.2d 1084 (3d Cir. 1988)..................................................................21, 23

*Evans v. Jeff D.*,
475 U.S. 717 (1986).....................................................................................24

*Fiberlight, LLC v. Nat'l R.R. Passenger Corp.*,
81 F. Supp. 3d 93 (D.D.C. 2015) ...........................................................13, 16

*GE Co. v. EPA*,
290 F.3d 377 (D.C. Cir. 2002) ......................................................................5

*Gentile v. State Bar of Nev.*,
501 U.S. 1030 (1991)...................................................................................25

*Gregory-Portland Indep. Sch. Dist. v. Tex. Educ. Agency*,
576 F.2d 81 (5th Cir. 1978) .........................................................................20

*GTE Sylvania, Inc. v. Consumers Union of United States, Inc.*,
445 U.S. 375 (1980).....................................................................................20

iii

*In re Dow Jones*,
  842 F.2d 603 (2d Cir. 1988).........................................................................25, 26

*In re Swine Flu Immunization Prods. Liab. Litig.*,
  880 F.2d 1439 (D.C. Cir. 1989) ............................................................................9

*In re Tutu Water Wells CERCLA Litig.*,
  326 F.3d 201 (3d Cir. 2003)...............................................................................28

*Interface Kanner, LLC v. JPMorgan Chase Bank, Nat'l Ass'n*,
  704 F.3d 927 (11th Cir. 2013) ............................................................................13

*Kaspersky Lab, Inc. v. United States Dep't of Homeland Sec.*,
  311 F. Supp. 3d 187 (D.D.C. 2018) ....................................................................13

*Lake James Community Volunteer Fire Dep't, Inc. v. Burke County, N.C.*
  149 F.3d 277 (4th Cir. 1998) ..............................................................................21

*Lapin v. Shulton, Inc.*,
  333 F.2d 169 (9th Cir. 1964) ..............................................................................19

*Leonard v. Clark*,
  12 F.3d 885 (9th Cir. 1993) ...........................................................................21, 23

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)......................................................................................10, 12

*Lujan v. Nat'l Wildlife Fed.*,
  497 U.S. 871 (1990)............................................................................................17

*Lykins v. Dep't of Justice*,
  725 F.2d 1455 (D.C. Cir. 1984) ..........................................................................20

*Macharia v. United States*,
  334 F.3d 61 (D.C. Cir. 2003) ...............................................................................9

*McInnis-Misenor v. Maine Med. Ctr.*,
  319 F.3d 63 (1st Cir. 2003) .................................................................................15

*Munsell v. Dept. of Agr.*,
  509 F.3d 572 (D.C. Cir. 2007) ............................................................................17

*Nat'l Treasury Employees Union v. United States*,
  101 F.3d 1423 (D.C. Cir. 1996) .....................................................................15, 16

*Nebraska Press Ass'n v. Stuart*,
    427 U.S. 539 (1976)............................................................................25

*New York Repub. State Comm. v. SEC*,
    799 F.3d 1126 (D.C. Cir. 2015) ......................................................17

*N.Y. State Dep't of Law v. FCC*,
    984 F.2d 1209 (D.C. Cir. 1993) ......................................................28

*Official Comm. of Unsecured Creditors of WorldCom, Inc. v. SEC*,
    467 F.3d 73 (2d Cir. 2006).............................................................28

*Paragould Cablevision, Inc. v. Paragould*,
    930 F.2d 1310 (8th Cir. 1991) ..................................................21, 23

*Parklane Hosiery Co. v. Shore*,
    439 U.S. 322 (1979)........................................................................28

*Pedini v. Bowles*,
    940 F. Supp. 1020 (N.D. Tex. 1996) ..............................................26

*Pitt News v. Pappert*,
    379 F.3d 96 (3d Cir. 2004)..............................................................11

*Retail Dig. Network, LLC v. Appelsmith*,
    810 F.3d 638 (9th Cir. 2016) ...........................................................11

*Rivera v. Rosenberg & Assocs., LLC*,
    142 F. Supp. 3d 149 (D.D.C. 2015) ................................................6

*Save Power Ltd. v. Syntek Fin. Corp.*,
    121 F.3d 947 (5th Cir. 1997) ..........................................................19

*Scandinavian Satellite Sys., AS v. Prime TV Ltd.*,
    291 F.3d 839 (D.C. Cir. 2002)..........................................................9

*SEC v. Allaire*,
    No. 03-cv-4087 (S.D.N.Y. May 6, 2019) .......................................18

*SEC v. Citigroup Glob. Mkts., Inc.*,
    752 F.3d 285 (2d Cir. 2014)....................................................4, 7, 27

*SEC v. Citigroup Glob. Mkts., Inc.*,
    673 F.3d 158 (2d Cir. 2012)............................................................28

*SEC v. 1Pool Ltd.*,
    No. 18-cv-2244, (D.D.C. Mar. 4, 2019) ..........................................................6

*SEC v. Clifton*,
    700 F.2d 744 (D.C. Cir. 1983) ........................................ 4, 13, 23-26, 28

*SEC v. NJ Affordable Homes Corp.*,
    No. 05-cv-4403 (D.N.J. Sept. 9, 2008) ..........................................................6

*SEC v. Prudential Sec. Inc.*,
    136 F.3d 153 (D.C. Cir. 1998) ....................................................................14

*SEC v. Randolph*,
    736 F.2d 525 (9th Cir. 1984) ......................................................................27

*SEC v. Wang*,
    944 F.2d 80 (2d Cir. 1991)....................................................................24, 28

*Simon & Schuster, Inc. v. Members of the N.Y. State Crime Victims Board*,
    502 U.S. 105 (1991) ....................................................................................11

*Spencer v. Kemna*,
    523 U.S. 1 (1998) ..........................................................................................9

*Texas v. United States*,
    523 U.S. 296 (1998)................................................................................15, 17

*Thomas v. Union Carbide Agric. Prods. Co.*,
    473 U.S. 568 (1985)....................................................................................15

*Town of Newton v. Rumery*,
    480 U.S. 386 (1987)................................................................................21, 23

*Treadaway v. Acad. of Motion Picture Arts & Scis.*,
    783 F.2d 1418 (9th Cir. 1986) ....................................................................19

*Ulmet v. United States*,
    888 F.2d 1028 (4th Cir. 1989) ....................................................................20

*United States v. Armour & Co.*,
    402 U.S. 673 (1971)................................................................................4, 24

*United States v. Brown*,
    218 F.3d 415 (5th Cir. 2000) ................................................................25, 26

*United States v. ITT Continental Baking Co.*,
    420 U.S. 223 (1975) ................................................................................................4

*United States v. Martin*,
    455 F.3d 1227 (11th Cir. 2006) ...........................................................................26

*United States v. Morrow*,
    2005 U.S. Dist. Lexis 8330 (D.D.C. 2005) .........................................................26

*United States v. Stone*,
    No. 19-cr-0018 (Feb. 2, 2019) ..............................................................................11

*United States v. Volvo Powertrain Corp.*,
    758 F.3d 330 (D.C. Cir. 2014) .............................................................................11

*United Transp. Union v. ICC*,
    891 F.2d 908 (D.C. Cir. 1989) .............................................................................12

*Valley Forge Christian College v. Americans United for Separation of Church & State,*
    *Inc.*, 454 U.S. 464 (1982) ....................................................................................13

*Wagar v. Dep't of Justice*,
    846 F.2d 1040 (6th Cir. 1988) .............................................................................20

*Wash. Metro. Area Transit Auth. v. Ragonese*,
    617 F.2d 828 (1980) .............................................................................................19

*W. Gulf Mar. Asso. v. ILA Deep Sea Local 24, etc.*,
    751 F.2d 721 (5th Cir. 1985) ...............................................................................19

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990) .............................................................................................12

*Williams v. Lew*,
    819 F.3d 466 (D.C. Cir. 2016) .............................................................................10

*Williams v. Vukovich*,
    720 F.2d 909 (6th Cir. 1983) ..........................................................................18, 24

*Wright v. Foreign Service Grievance Bd.*,
    503 F. Supp. 2d 163 (D.D.C. 2007) .....................................................................22

## STATUTES AND RULES

15 U.S.C. § 77i ..................................................................................................................17

15 U.S.C. § 78aa ..............................................................................................................11

15 U.S.C. § 78y(a) ...........................................................................................................17

15 U.S.C. § 7246(a) .........................................................................................................28

28 U.S.C. §2201 ...............................................................................................................16

17 C.F.R. § 202.1(c) ...........................................................................................................5

17 C.F.R. § 202.5(e) ..................................................................................................Passim

17 C.F.R. § 240.10b-5(b) ................................................................................................11

37 FED. REG. 25224 (Nov. 29, 1972) .......................................................................4, 22

Federal Rule of Civil Procedure 12(b)(1) ....................................................................9, 30

Federal Rule of Civil Procedure 12(b)(6) ..................................................................20, 30

Federal Rule of Civil Procedure 60(b)(5) ......................................................................13

Federal Rule of Civil Procedure 60(b)(6) ......................................................................13

**INTRODUCTION**

The Securities and Exchange Commission, like many federal agencies, resolves some of its enforcement actions through consent judgments, whereby a defendant consents to a settlement that becomes a judgment upon review, approval, and entry by a district court.  Resolution by consent judgment has benefits for both parties, which include avoiding the cost and uncertainty of trial and ensuring continuing jurisdiction over the agreement.  When a defendant does not admit to wrongdoing as part of a consent judgment, the Commission, pursuant to a 1972 policy that guides staff in its Division of Enforcement, will insist upon inclusion of a "no-deny" provision, which precludes a defendant from publicly denying the allegations in the complaint. The Commission negotiates these provisions because denials of allegations following entry of a consent judgment undermine the authority of the Court that approved it, undercut the factual basis for the enforcement action and the relief obtained, and create confusion for investors and the market.  If a defendant breaches a no-deny provision, the Commission can move to vacate the judgment and continue litigating the matter.  As with all settlement offers, a defendant can choose to settle or refuse and proceed to trial.

The Cato Institute challenges these provisions on First Amendment grounds.  Cato seeks wide-ranging declaratory and injunctive relief that would vacate no-deny provisions in every past Commission consent judgment entered by a district court and would preclude the Commission from negotiating them in future consent judgments.  Cato has not entered into a consent judgment with the Commission, and no person or entity bound by a Commission consent judgment is a party to this action.

Cato's alleged interest in the no-deny provisions is that it seeks to facilitate the public denial of allegations by unnamed defendants who entered into past consent judgments.  Cato

1

does not identify any law or order that would subject it to sanction for publishing these defendants' denials.  Rather, Cato claims that the no-deny provisions make the settling defendants unwilling to allow Cato to publish their denials.  Cato does not identify the settling defendants, submit the Court with the consents they signed, or offer information about when and where the judgments were entered.

Cato's action is fatally flawed in multiple ways.  Cato lacks standing under Article III because it is not directly injured by consent judgments that bind third parties not before the Court and because the manner in which the no-deny provisions function—their violation creates the *possibility* that the Commission may seek to vacate the settlement—reveals that there is no imminent and actual injury to Cato that will be redressed by a favorable ruling.  Principles of prudential standing also counsel against jurisdiction because Cato is challenging a judicially approved contract to which it was neither a party nor an intended beneficiary.

This Court also lacks jurisdiction on ripeness grounds because Cato's claims rest on speculation about future events that implicate the authority of other courts.  If a settling defendant breaches his consent, the terms of his agreement provide that the Commission *may* move to vacate the judgment and proceed towards trial, which *may* be granted by the initial court.  Ripeness precludes this Court from issuing an advisory constitutional opinion, particularly when doing so will invade the jurisdiction of numerous federal courts.  Indeed, Cato asks this Court to invalidate no-deny provisions in *all* past consent judgments—which number in the thousands—regardless of whether all settling defendants desire such an outcome.

Even if this Court can exercise jurisdiction, it should dismiss Cato's complaint for failure to state a First Amendment claim.  Cato's mislabeling of the no-deny provisions as "gag orders" disregards that the settling defendants agreed to the provisions and waived whatever

2

constitutional rights they may have had.  The no-deny provisions are not imposed by a judge against a settling defendant's will; they are negotiated provisions in a deal a defendant was free to reject.  Waivers of constitutional rights are inherent in consent judgments, and parties should not be relieved of the bargain they made after the fact, while continuing to enjoy the benefits.

Yet even if the no-deny provisions could be viewed as the equivalent to a judicial directive involuntarily restraining speech, they are justified by compelling interests.  The Commission has an interest in avoiding public confusion about the factual basis for its enforcement actions and settlements and ensuring that denials do not undercut the deterrent effect of describing the allegations.  And courts have an interest in ensuring that their approval of a consent judgment is not undermined by a subsequent denial that a factual basis exists for the remedy ordered, as well as an interest in promoting the strong public policy favoring settlements, which conserve judicial resources.  The provisions are tailored in terms of scope—they restrict only public denials of allegations that would undercut those interests—and tailored in terms of remedy—the consequence of their breach is the potential loss of the settlement.

## BACKGROUND

Cato challenges no-deny provisions that appear in past Commission consent judgments approved by federal courts, as well as the application of a Commission policy concerning these provisions, which guides its Division of Enforcement when negotiating consent judgments.[1]

---

[1]  Cato appears to challenge no-deny provisions included in settlements approved by the Commission in administrative proceedings.  Am. Compl. ¶¶ 2, 16, 23, 29, 51, 59, 67-68.  The fatal flaws in Cato's complaint are the same regardless of the venue for the settlement, and because Cato's complaint focuses on consent judgments entered in federal court, so does this brief.  Am. Compl. ¶ 37.

3

A.    **The Commission adopted a policy announcing that it would not negotiate consent judgments that allowed defendants to deny the allegations in the complaints against them.**

The Commission resolves some of its enforcement actions by entering into consent judgments. *SEC v. Clifton*, 700 F.2d 744, 748 (D.C. Cir. 1983) (per curiam). Consent judgments, which are functionally identical to consent decrees, are "compromises in which the parties give up something they might have won in litigation and waive their rights to litigation." *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 235 (1975). Consent judgments "provide parties with a means to manage risk," and the "numerous factors that affect a litigant's decision whether to compromise a case or litigate it to the end include the value of the particular proposed compromise, the perceived likelihood of obtaining a still better settlement, the prospects of coming out better, or worse, after a full trial, and the resources that would need to be expended in the attempt." *SEC v. Citigroup Global Mkts., Inc.*, 752 F.3d 285, 295 (2d Cir. 2014) (internal quotation marks omitted).

Consent judgments have "attributes both of contracts and of judicial decrees." *ITT Continental Baking*, 420 U.S. at 236 n.10. They resemble contracts because they "are entered into by parties to a case after careful negotiation has produced agreement on their precise terms." *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971). They are judicial decrees because, unlike private settlements entered outside of court, the agreed-upon terms are memorialized in a judicial order and the entering court frequently retains jurisdiction over their enforcement. *Id.*

In 1972, the Commission issued a statement regarding its settlement practices. It focused on a problem of defendants denying allegations after agreeing to a settlement embodied in a judgment or other order. The Commission announced "its policy not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegations in the complaint or order for proceedings." 37 FED. REG. 25224 (Nov. 29, 1972),

4

codified at 17 C.F.R. § 202.5(e).  The policy was intended "to avoid creating, or permitting to be created, an impression that a decree is being entered or a sanction imposed, when the conduct alleged did not, in fact, occur."  *Id.*

The policy appears in the Commission's informal procedures, *i.e.*, "procedures generally followed by the Commission which have not been formalized in rules." 17 C.F.R. § 202.1(c). Rule 202.5(e) is public guidance for Commission staff; it directs Enforcement attorneys while making clear to litigants that when the Commission negotiates a consent judgment, and when the litigant does not admit wrongdoing, the Commission will not agree to a settlement that allows a public denial of the allegations in the complaint.  *See Ass'n of Flight Attendants-CWA v. Huerta*, 785 F.3d 710, 716 (D.C. Cir. 2015) (a policy statement explains how an agency "will exercise its broad enforcement discretion" and apprises "the regulated community of the agency's intentions as well as informing the exercise of discretion by agents and officers in the field") (internal quotation marks omitted).   Rule 202.5(e) does not impose any obligations on litigants, who can reject a proposed settlement and proceed with the litigation.  *See GE Co. v. EPA*, 290 F.3d 377, 382-83 (D.C. Cir. 2002) (describing a legislative rule as expressing "a change in substantive law or policy (that is not an interpretation) which the agency intends to make binding, or administers with binding effect") (internal quotation marks omitted).

   **B.    Applying this policy, the Commission has entered into consent judgments with no-deny provisions.**

This litigation stands on unusual footing.  The lone plaintiff is Cato, a think tank, that has not identified the settling defendants or attached the consents they signed.  Am. Compl. ¶ 9. Rather, Cato quotes only an excerpt of a consent judgment signed by one settling defendant. Am. Compl. ¶¶ 9, 37.  To mitigate this litigation tactic, this Court can and should take judicial notice of the attached consents and final judgments, which contain language that the Commission

uses when a defendant does not admit allegations.  *SEC v. 1Pool Ltd*., No. 18-cv-2244, Dkt. 13-14 (D.D.C. Mar. 4, 2019) (Exhibits 1 & 2); *SEC v. NJ Affordable Homes Corp.*, No. 05-cv-4403, Dkt. 127 (D.N.J. Sept. 9, 2008) (Exhibits 3 & 4); *see Covad Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005) (a court may take judicial notice of public records in a motion to dismiss).  Taking judicial notice is particularly appropriate here, since Cato quoted part of a consent but did not attach the entire document or provide sufficient details that would allow the Court to locate the document.  *Rivera v. Rosenberg & Assocs., LLC*, 142 F. Supp. 3d 149, 160 & n.6 (D.D.C. 2015) ("Because plaintiff incorporates the Collection Letter by reference in his complaint . . . the Court may properly consider it in ruling on defendant's motion to dismiss.").

        As these documents show, consents signed by defendants contain several provisions relevant to Cato's allegations.  The defendant generally agrees to the entry of a consent "[w]ithout admitting or denying the allegations in the complaint."  Ex. 1, p.1; Ex. 3, ¶ 1.  The settling defendant states that he "understands and agrees to comply with the Commission's policy 'not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegations in the complaint or order for proceedings.'"  Am. Compl. ¶ 37; Ex. 2, ¶ 11 & Ex. 4, ¶ 12, quoting 17 C.F.R. 202.5(e).  The defendant further "agrees not to take any action or to make or cause to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis."  *Id*.  There are exceptions.  A settling defendant may "testify truthfully about any matter under oath in connection with a legal or administrative proceeding," and the consent does not affect the settling defendant's "right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party."  *Id*.  Finally, the

consent provides a remedy available to the Commission if the defendant breaches the no-deny provision: "the Commission may petition the Court to vacate the Final Judgment and restore this action to its active docket." *Id.*

Several other provisions are pertinent.  The consent affirms that a settling defendant "enters into this Consent voluntarily and represents that no threats, offers, promises, or inducements of any kind have been made by the Commission or any member, officer, employee, agent, or representative of the Commission to induce Defendant to enter into this Consent."  Ex. 4, ¶ 7; Ex. 2, ¶ 6 .  The settling defendant also "acknowledges that no promise or representation has been made by the Commission or any member, officer, employee, agent, or representative of the Commission with regard to any criminal liability that may have arisen or may arise from the facts underlying this action or immunity from any such criminal liability." Ex. 4, ¶ 11; Ex. 2, ¶ 10.  The settling defendant "waives the entry of findings of fact and conclusions of law" and "waives the right, if any, to a jury trial and to appeal from the entry of the Final Judgment." Ex. 4, ¶¶ 5-6; Ex. 2, ¶¶ 4-5.  Finally, the settling defendant agrees that the presiding court "shall retain jurisdiction over this matter for purposes of enforcing the terms of the Final Judgment" into which the consent is incorporated.  Ex. 4, ¶ 15; Ex. 2, ¶ 15.

After the settling defendant signs the consent, the Commission submits it, along with a proposed final judgment and any other supporting documents, to the court for approval. *See Citigroup Global Mkts.*, 752 F.3d at 294-95 (describing the judicial review process for consent judgments).  If the court approves, it will enter a final judgment, which incorporates the consent, describes the agreed-upon relief, and states that the court will "retain jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment."  Ex. 1, ¶ VII; Ex. 3, ¶ VI.

**C.      Cato alleges that it seeks to publish or otherwise facilitate public denials of allegations in settled Commission enforcement actions.**

Cato's purported interest in consent judgments arises from its allegation that an unidentified author provided it with a manuscript describing a Commission enforcement action that he settled.  Am. Compl. ¶ 31.  Cato alleges that it has entered into a contract with the settling defendant to publish the manuscript as a book.  *Id*. ¶¶ 34-35.  Cato claims that it cannot publish the book because the author agreed to a no-deny provision and, in the manuscript, the author "asserts that the [Commision's] allegations against him were unfounded and unfair."  *Id.* ¶¶ 36, 38-39, 66.  Cato does not allege that any contractual provision, statute, or judicial order would subject Cato to any sanction, punishment, or other remedies for publishing the book.  And, apart from alleging that the unidentified author settled to avoid "litigation expenses," *id*. ¶ 32, Cato is silent about the context and content of the consent judgment, including when the consent judgment was entered and what court entered it.

Cato further alleges that it has spoken with other unidentified individuals who entered into consent judgments with the Commission and "want to publicly contest" the Commission's allegations against them, but may be unwilling to do so because of provisions in their consents.  Am. Compl. ¶ 46.  Again, Cato does not identify these individuals, describe the actions against them, or attach the consents they signed.  And Cato does not allege that it would violate any law, order, or contract if it published articles or held events regarding these consent judgments.  Rather, Cato alleges only that the settling defendants' purported unwillingness to speak publicly precludes it from holding a "public discussion."  *Id.* ¶¶ 44, 45-48, 67-68.

D.      **Cato challenges the application of the Commission's policy on First Amendment Grounds**

Cato asserts a single, non-statutory constitutional claim, alleging that the Commission's policy of negotiating and including no-denial provisions in consent judgments violates the First Amendment.  Am. Compl. ¶¶ 69-86.  Cato also alleges that the enforcement of these provisions would violate the First Amendment.  Am. Compl. ¶¶ 73-74.  Cato challenges the constitutionally of Rule 202.5(e) as applied both generally and to the specific provisions that bind the unnamed settling defendants discussed in the complaint.  *Id.* ¶¶ 78-79.

Cato seeks broad relief.  It requests a declaratory judgment that the Commission's policy is unconstitutional and an injunction against its "enforcement."  Am. Compl. at 16, ¶¶ A-B.  Cato also seeks a declaratory judgment that the specific consent judgments binding the unnamed defendants are "unenforceable," as well as a declaratory judgment that "all past" no-deny provisions are "unenforceable."  *Id.* at ¶¶ C-D.  Thus, Cato asks this Court to strike down all existing no-deny provisions and block all future ones in Commission consent judgments.

## ARGUMENT

I.      **This Court lacks subject matter jurisdiction.**

The Court should dismiss Cato's complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.  Cato bears the burden of establishing that the Court has jurisdiction.  *Spencer v. Kemna*, 523 U.S. 1, 10-11 (1998); *In re Swine Flu Immunization Prods. Liab. Litig.*, 880 F.2d 1439, 1442-43 (D.C. Cir. 1989).  While the Court should accept as true the complaint's material allegations, *Scandinavian Satellite Sys., AS v. Prime TV Ltd.*, 291 F.3d 839, 844 (D.C. Cir. 2002), because subject-matter jurisdiction focuses on the Court's power to hear the claim, the Court must scrutinize those allegations closely.

*Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003).  This Court does not have

jurisdiction because Cato lacks standing and because Cato's claim is not ripe.

### A.  Cato lacks standing to challenge consent judgments entered into by third parties not before the Court.

#### 1.  Cato does not have Article III standing.

The first jurisdictional defect in Cato's suit arises from its failure to demonstrate the

"irreducible constitutional minimum" of Article III standing.  *Lujan v. Defenders of Wildlife*, 504

U.S. 555, 560-61 (1992).  Cato must allege (1) "an injury in fact—an invasion of a legally

protected interest" that is "actual or imminent, not conjectural or hypothetical"; (2) a "causal

connection between the injury and the conduct complained of"; and (3) that it is "likely, as

opposed to merely speculative, that the injury will be redressed by a favorable decision."  The

absence of any one of injury, causation, or redressability defeats standing.  *Id.* (internal quotation

marks omitted); *Williams v. Lew*, 819 F.3d 466, 475 (D.C. Cir. 2016).  When a plaintiff is not

"the object of the government action" and the "asserted injury arises from the government's

allegedly unlawful regulation" of a third party, standing is "substantially more difficult" to

establish because it hinges "on the response of the regulated (or regulable) third party to the

government action."  *Lujan*, 504 U.S. at 562 (internal quotation marks omitted).  In that instance,

"much more is needed" for standing.  *Id*.

Cato, which is not the object of Commission action, falls far short of the requisite "much

more."  Cato does not and cannot articulate any direct injury from consent judgments it did not

sign and that do not bind it.  Cato is a "nonprofit think tank" that does not purport to engage in

activities that fall within the Commission's jurisdiction.  Am. Compl. ¶ 2.  The Commission has

no authority to block Cato from publishing *ex ante* or to bring an *ex post* enforcement action

seeking a sanction, penalty, or other remedy for publication.  Moreover, Cato alleges that the no-

denial provisions have not prevented settling defendants, such as the manuscript author, from

speaking directly to Cato. Am. Compl. ¶¶ 34-36, 42-48 (describing how Cato received "*private*

*statements of dissent*" that it wishes to publicize). Cato's allegations of injury derive solely from

the actions of third parties not before the Court—unnamed defendants who signed consents that

were approved by federal courts and who, Cato claims, are unwilling to allow Cato to publicize

their denials because of the consequences of such denials. Am. Compl. ¶¶ 39-48.[2]

Cato's Article III standing collapses at this point because its mislabeling of the no-deny

provision as a "gag order" elides how the consent judgment actually functions. A consent

judgment is not a statute or regulation, such as Rule 10b-5, that prohibits making false or

misleading statements in connection with a securities transaction and exposes violators to civil

and criminal liability. 17 C.F.R. 240.10b-5(b); 15 U.S.C. 78aa. Nor is it a judicial order that

bars trial-related speech against a participants' will, with civil or criminal contempt looming.

*E.g.*, *United States v. Stone*, No. 19-cr-0018, Dkt. 36 (D.D.C. Feb. 2, 2019).

Rather, a no-deny provision is a clause in a negotiated contract, which contains a

specified remedy for breach. *United States v. Volvo Powertrain Corp.*, 758 F.3d 330, 343 (D.C.

Cir. 2014) ("'[I]f parties to a consent decree wish to cabin the district court's equitable discretion

by stipulating the remedies for breach, they are free to do so,' and 'the stipulation will fix the

---

[2]  As a result, Cato could not premise a standing argument on cases where a statute or regulation
would directly subject an entity to some sanction, penalty, or restriction because of its role as a
publisher. *E.g.*, *Simon & Schuster, Inc. v. Members of the N.Y. State Crime Victims Board*, 502
U.S. 105, 109 (1991) (publisher could challenge a law that required the publisher to hold funds
in escrow for victims of a crime, which directly affected how the publisher handled the money it
obtained from the sale of the book*s*); *Retail Dig. Network, LLC v. Appelsmith*, 810 F.3d 638, 647
(9th Cir. 2016) (entity that profited from creating liquor ads had standing to challenge a law that
subjected it to criminal penalties for those ads); *Pitt News v. Pappert*, 379 F.3d 96, 105-06 (3d
Cir. 2004) (a newspaper had standing to challenge a law prohibiting it from receiving payments
for running alcoholic beverage advertisements).

measure of relief to which the victim of a breach is entitled.'"), quoting *Cook v. City of Chicago*, 192 F.3d 693, 698 (7th Cir. 1999).  Under the terms of the consent, if the settling defendant "breaches th[e] agreement" by publicly denying the allegations, the Commission "may petition the Court [that entered the consent judgment] to vacate the Final Judgment and restore th[e] action to its active docket."  Am. Compl. ¶ 37.  In the event of such a breach, a defendant faces the *possibility* that the Commission may seek to vacate the entire agreement and the *possibility* that a court may grant that relief and restore the *status quo ante*.  Thus, the only *possible* harm to Cato is that the settling defendants are unwilling to speak because they face the possibility of no longer being able to enjoy the benefit of the bargain *if* the Commission moves to vacate the settlement and *if* a court grants that motion after the settling defendants breach.

Such an alleged injury—if it is even a legally cognizable injury—is insufficient for Article III standing because it is "conjectural or hypothetical," not "actual or imminent."  *Lujan*, 504 U.S. at 560, 564.  If a settling defendant breaches the settlement, whether the Commission chooses al to ask a court to vacate the consent judgment and whether the court grants that motion are all speculative future events.  And "[a]llegations of possible future injury do not satisfy the requirements of Art. III," because a "threatened injury must be certainly impending to constitute injury in fact."  *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (internal quotation marks omitted); *Chamber of Commerce v. EPA*, 642 F.3d 192, 200 (D.C. Cir. 2011); *United Transp. Union v. ICC*, 891 F.2d 908, 913 (D.C. Cir. 1989) ("[A]ny petitioner alleging only future injuries confronts a significantly more rigorous burden to establish standing.").

Moreover, there is an insurmountable redressability problem—the same possibility of a court vacating the deal exists regardless of whether the settling defendant speaks publicly or this Court grants Cato the relief it seeks.  If a settling defendant breaches the settlement, the

12

Commission may move the original court to vacate the entire deal. And if this Court were to strike down the no-deny provisions as unconstitutional, it would lead to the same result: the Commission *may* move the original court to vacate the entire deal because this Court's ruling would alter its material terms. *See Clifton*, 700 F.2d at 746-47 (describing the process, under Federal Rule of Civil Procedure 60(b)(5) and (6), for modifying a consent judgment "if it is no longer equitable"). Thus, the settling defendants face the same outcome whether the no-deny provisions are in effect and they publicly deny or whether the no-deny provisions are struck down as unconstitutional—either way, the Commission may choose to ask the rendering court to vacate the consent judgment, a request that may or may not be granted. *Cf. Kaspersky Lab, Inc. v. Dep't of Homeland Sec.*, 311 F. Supp. 3d 187, 219 (D.D.C. 2018) ("It is a well-established principle that a plaintiff cannot demonstrate redressability when its lawsuit challenges only one of two government actions that both independently produce the same alleged harm.").

> ## 2. *Prudential standing bars Cato's complaint.*

The Court should also dismiss the complaint for lack of prudential standing, which precludes a party from resting its "claim to relief on the legal rights or interests of third parties." *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 474 (1982). This "third-party" aspect of prudential standing prohibits parties from bringing suit based on the terms of a contract to which they were neither parties nor intended beneficiaries. *Deutsche Bank Nat'l Tr. Co. v. FDIC*, 717 F.3d 189, 194 (D.C. Cir. 2013), citing *Interface Kanner, LLC v. JPMorgan Chase Bank, Nat'l Ass'n*, 704 F.3d 927, 932 (11th Cir. 2013); *Fiberlight, LLC v. Nat'l R.R. Passenger Corp.*, 81 F. Supp. 3d 93, 109 (D.D.C. 2015) ("[U]nder the prudential standing doctrine, a person can sue for enforcement, interpretation, or rescission of a contract only if that person is a party to, or a third-party beneficiary of, that

13

contract."). As applied to government consent decrees, only parties to and intended beneficiaries of a government consent judgment can raise a challenge to it. *See SEC v. Prudential Sec. Inc.*, 136 F.3d 153, 160 (D.C. Cir. 1998) (discussing the decision in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975) and reaffirming "that third parties to government consent decrees cannot enforce those decrees absent an explicit stipulation by the government to that effect"); *see Deutsche Bank*, 717 F.3d at 194 (describing prudential standard as "similar to the concept embodied" in Rule 24).

Under this precedent, prudential standing should prompt this Court to dismiss the complaint because Cato is a stranger to the consent judgments at issue, as well as to the broader universe of *all* past consent judgments that Cato seeks to disrupt. The Commission entered into those consent judgments with the unnamed settling defendants in order to end the litigation, allow it to avoid the risks and expenses of trial, and to accelerate the process of returning money to injured investors (where possible). Cato cannot claim that the consent judgments identified Cato as an intended, or even incidental, beneficiary.

The application of prudential standing takes on added salience here in light of the sweeping relief Cato seeks. Prudential standing ensures "'the avoidance of the adjudication of rights which those not before the Court may not wish to assert, and the assurance that the most effective advocate of the rights at issue is present to champion them.'" *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 15 n.7 (2004), quoting *Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 80 (1978). But in the name of selling books, engaging in "promotional activities," and hosting conferences and other events, Am. Compl. ¶¶ 2-3, 5, 31-48, Cato asks this Court to materially alter *thousands* of past consent judgments, Am. Compl. at 16, ¶ C. All settling defendants may not wish to challenge their consents or face the possibility of re-opening

14

their cases when doing so risks bringing attention to settled matters, creates the possibility of undesired future litigation, and exposes them to potentially more severe remedies if they lose at trial.  Moreover, Cato asks this Court to preclude the Commission from ever being able to negotiate these provisions in the future, even though litigants may prefer to agree to a limited self-imposed silence rather than face the possibility that the Commission will prefer trial in the absence of the flexibility to negotiate this material term.

### B.  The Court also lacks jurisdiction because Cato asserts unripe claims that improperly seek to invade the jurisdiction of other federal courts.

Cato faces another jurisdictional obstacle that it cannot overcome: ripeness.  Like standing, the ripeness inquiry arises from the Article III prohibition on courts issuing advisory opinions and also has a prudential component.  *Nat'l Treasury Employees Union v. United States*, 101 F.3d 1423, 1428, 1431 (D.C. Cir. 1996) ("Ripeness * * * shares the constitutional requirement of standing that an injury in fact be certainly impending," and "[p]rudentially, the ripeness doctrine exists to prevent the courts from wasting our resources by prematurely entangling ourselves in abstract disagreements[.]")   "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'"  *Texas v. United States*, 523 U.S. 296, 300, (1998), quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985).  Whether a case is fit for judicial review "'does not pivot solely on whether a court is capable of resolving a claim intelligently, but also an assessment of whether it is appropriate for the court to undertake the task'" because "'if a plaintiff's claim, though predominantly legal in character, depends on future events that may never come to pass, or that may not occur in the form forecasted, then the claim is unripe.'"  *Devia v. NRC*, 492 F.3d 421, 424–25 (D.C. Cir. 2007), quoting *McInnis-Misenor v. Maine Med. Ctr.*, 319 F.3d 63, 72 (1st Cir. 2003).

The ripeness inquiry takes on added significance when a party invokes the Declaratory Judgment Act, as Cato does here.  Am. Compl. ¶ 6.  A declaratory judgment requires an "actual controversy," 28 U.S.C. 2201, and "a case based on the legal consequences of potential future conduct does not present an actual controversy, since the conduct may not take place." *Fiberlight*, 81 F. Supp. 3d at 105-06 (internal quotation marks omitted).  "Typically, a declaratory judgment claim based on the occurrence of a future or contingent event is not sufficiently immediate or real to be justiciable."  *C.F. Folks, Ltd. v. DC Jefferson Bldg., LLC*, 308 F. Supp. 3d 145, 150 (D.D.C. 2018).

Cato's claim is not ripe under Article III or its prudential component, which is guided by a two-part analysis that evaluates "'(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration.'"  *NTEU*, 101 F.3d at 1431, quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967).  Both parts reveal the flaws in Cato's suit.

First, the issues are not fit for judicial decision because Cato's challenge to past no-deny provisions rests on contingent future events that may (or may not) occur if a settling defendant denies the allegations in the complaint.  The no-deny provisions do not create an immediate consequence for their breach—they are not statutes or regulations, the violation of which create civil and criminal liability, but rather are contractual provisions with a specific remedy for breach that must be invoked by the Commission.  The invocation of that remedy depends on whether the Commission moves to vacate a consent judgment and whether the entering court decides to restore the case to active status.  Neither event may come to pass—the Commission may not move to vacate the consent judgment or a court may refuse to press the reset button.  Because the alleged unwillingness of the settling defendants to have Cato publicize their denials depends entirely on these speculative, future events, Cato's claims are not fit for judicial review.

This ripeness problem becomes even starker in light of Cato's request that this Court

enjoin the Commission from negotiating future consent judgments with no-deny provisions.

Am. Compl. at 16, ¶¶ A, E.  Cato is bringing an "as applied" challenge in all respects—it

challenges Rule 202.5(e) "as interpreted and enforced" by the Commission, *Id.* ¶ 73; *Id.* at 16,

¶ A—and how the Commission's no-deny policy is applied in the future is contingent upon many

factors.  Whether or not the Commission commences an enforcement action, negotiates a consent

judgment instead of going to trial, or negotiates a no-deny clause as opposed to requiring

admissions are all "contingent future events that may not occur as anticipated, or indeed may not

occur at all." *Texas*, 523 U.S. at 300 (internal quotation marks omitted); *see also Munsell v.*

*Dept. of Agr.*, 509 F.3d 572, 585 (D.C. Cir. 2007) ("The ripeness issue normally arises in cases

in which a regulated party faces the *threat* of future agency enforcement action.") (internal

quotation marks omitted).[3]

Cato's request for declaratory and injunctive relief prohibiting the Commission from

negotiating no-deny provisions is effectively a prohibited challenge to the Commission's

enforcement program.  In *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871 (1990), the Court held that a

party cannot "seek *wholesale* improvement" of agency programs "by court decree," rather "than

in the offices of the [agency] or the halls of Congress, where programmatic improvements are

normally made."  *Id.* at 891-92.  Broad policies are not ordinarily considered ripe for review until

the "controversy has been reduced to more manageable proportions, and its factual components

fleshed out, by some concrete action applying the regulation to the claimant's situation in a

---

[3]  To the extent Cato asserts that it is facially challenging Section 202.5(e), it has come to the
wrong court at the wrong time.  Commission orders must be appealed exclusively to an
appropriate federal court of appeals and within 60 days.  15 U.S.C. 77i; 15 U.S.C. 78y(a); *New
York Repub. State. Comm. v. SEC*, 799 F.3d 1126, 1134-36 (D.C. Cir. 2015).  Similarly, a
challenger to a Commission order resolving an administrative proceeding that contains a no-deny
provision must file a petition for review in an appellate court within 60 days of entry.

fashion that harms or threatens to harm him." *Id.* at 891.  Yet Cato seeks to use this suit to alter the Commission's enforcement program and shift the Commission's negotiating positions before any concrete action is taken with regard to a future consent judgment.

The second part of the ripeness analysis also disfavors Cato.  There is no hardship to the settling defendants (or Cato) from denying Cato the opportunity to seek an advisory constitutional opinion from this Court.  Settling defendants, such as the manuscript author, can seek relief from the original courts that entered the consent judgments, which are "subject to continued judicial policing." *Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983).  Leaving no doubt on this issue, the Commission's consent judgments ensure that the rendering court retains "jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment," and require the defendants to agree that the court "shall retain jurisdiction over this matter for purposes of enforcing the terms of the Final Judgment."  Ex. 4, ¶ 15; Ex. 2, ¶ 15.  If the settling defendants publicly deny the allegations and the Commission moves to vacate the consent judgments in response to that breach, the defendants can raise any constitutional issues before the court that will hear the Commission's motion.  Or the settling defendants can invoke the First Amendment by moving for modification of their consent judgments before speaking, as a settling defendant recently did.  *SEC v. Allaire*, No. 03-cv-4087, Dkt. 24 (S.D.N.Y. May 6, 2019) (pending motion for relief from a no-deny provision before the court that entered the consent judgment).  Either way, the proper vehicle is review of the consent judgments before the courts that entered them, not a premature action in *this* Court.

Cato's use of this suit to bypass the original courts with continuing jurisdiction raises another serious jurisdictional issue.  By asking this Court to strike down no-deny provisions in

18

"all past" consent judgments, Am. Compl. at 16, ¶¶ B, C, Cato effectively invites this Court to invade the jurisdiction of many, and perhaps all, of the federal district courts in the United States.

This Court should decline to undertake such a radical maneuver.  "Considerations of comity and orderly administration of justice," *Wash. Metro. Area Transit Auth. v. Ragonese*, 617 F.2d 828, 830 (D.C. Cir. 1980), require federal courts of "coordinate jurisdiction and equal rank" to "exercise care to avoid interference with each other's affairs," *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997) (internal quotation marks omitted).  "The concern manifestly is to avoid the waste of duplication" and "to avoid rulings which may trench upon the authority of sister courts." *W. Gulf Mar. Ass'n. v. ILA Deep Sea Local 24*, 751 F.2d 721, 729 (5th Cir. 1985).  Addressing the analogous situation of multiple simultaneous suits challenging the same agency conduct, the Supreme Court has advised that a court should "dismiss a declaratory judgment or injunctive suit if the same issue is pending in litigation elsewhere." *Abbott Labs*, 387 U.S. at 155.

In those circumstances, "considerations of comity and orderly administration of justice demanded that the nonrendering court should decline jurisdiction of such an action" when a remedy is available in the rendering court.  *Treadaway v. Acad. of Motion Picture Arts & Scis.*, 783 F.2d 1418, 1421 (9th Cir. 1986).  When an "issuing court has continuing jurisdiction" over a judgment, "relief should be sought from the issuing court," not a second, different federal court. *Lapin v. Shulton, Inc.*, 333 F.2d 169, 170, 172 (9th Cir. 1964).  Courts have applied this principle in a variety of analogous contexts, including by refusing to permit plaintiffs to use FOIA lawsuits to collaterally attack orders that prohibit public disclosure of records and by forcing those plaintiffs instead to "first succeed in having the issuing court modify or vacate the injunction barring disclosure."  *Alley v. Dep't of Health & Human Servs.*, 590 F.3d 1195, 1204 (11th Cir.

19

2009), citing *Lykins v. Dep't of Justice*, 725 F.2d 1455, 1460-61 (D.C. Cir. 1984); *see also GTE Sylvania Inc. v. Consumers Union of United States*, 445 U.S. 375, 387 (1980); *Wagar v. Dep't of Justice*, 846 F.2d 1040, 1047 (6th Cir. 1988).[4] Dismissal is proper here to avoid usurping the jurisdiction of those courts with continuing jurisdiction over the consent judgments, which can adjudicate any questions about the enforceability of the no-deny provisions as they arise.


## II.    Cato's Complaint Should Be Dismissed for Failure to State a Claim

This Court should dismiss on jurisdictional grounds, but if it reaches the merits, it should dismiss Cato's complaint under Federal Rule of Civil Procedure 12(b)(6) because it fails to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To survive a Rule 12(b)(6) motion, Cato's legal conclusions must be supported by factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  The plausibility standard requires that the pleader show more than a sheer possibility of success. *Twombly*, 550 U.S. at 556.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Cato does not state a plausible First Amendment claim because the settling defendants agreed, for consideration, to waive any First Amendment rights to deny the allegations in the

---

[4] *Accord Ulmet v. United States*, 888 F.2d 1028, 1031 (4th Cir. 1989) (stating that retaining jurisdiction over a claim seeking to alter a different court's order "would strike at the heart of judicial comity"); *Gregory-Portland Indep. Sch. Dist. v. Tex. Educ. Agency*, 576 F.2d 81, 83 (5th Cir. 1978) (holding that because "a continuing power over" an order existed in the first court, a second court's issuance of relief "seriously interfered" with the power of the first court "to maintain the integrity of the order.").

complaint publicly.  And even if this Court could somehow look past this waiver, the no-deny

provisions remain constitutional under the First Amendment.

### A.  The settling defendants waived their First Amendment rights.

Unlike restraints imposed by a court against the will of the silenced party, the provisions

that Cato challenges are voluntary agreements not to speak on a specific topic, a distinction with

a dispositive constitutional difference.  Civil defendants may waive their constitutional rights,

including as part of an agreement to end litigation.  *Town of Newton v. Rumery*, 480 U.S. 386,

393 (1987); *D.H. Overmyer Co. v. Frick Co.*, 405 U.S. 174, 184-87 (1972).  As with criminal

guilty pleas, private agreements enforced by judicial orders, and contracts with state actors,

nothing precludes a defendant to a civil law enforcement action from relinquishing a variety of

constitutional protections, including First Amendment rights.  *E.g.*, *Boykin v. Alabama*, 395 U.S.

238, 243 (1969); *Democratic Nat'l Comm. v. Republican Nat'l Comm.*, 673 F.3d 192, 205 (3d

Cir. 2012); *Lake James Cmty. Volunteer Fire Dep't, Inc. v. Burke County, North Carolina*, 149

F.3d 277, 280-81 (4th Cir. 1998); *Leonard v. Clark*, 12 F.3d 885, 889 (9th Cir. 1993); *Paragould

Cablevision, Inc. v. City of Paragould*, 930 F.2d 1310, 1315 (8th Cir. 1991); *Erie Telecomms. v.

City of Erie*, 853 F.2d 1084, 1096 (3d Cir. 1988).  Indeed, consent judgments entered into with

government entities necessarily involve the waiver of constitutional rights, including the right to

a trial and the right to appeal.

Courts have assumed, without deciding, that in a civil case, a waiver must be voluntary,

knowing, and intelligent, a standard that would be satisfied here.  *Lake James*, 149 F.3d at 280;

*Doe v. Marsh*, 105 F.3d 106, 111 (2d Cir. 1997) (although "the Supreme Court has explicitly

held that a waiver of a constitutional right in the criminal context must be made 'voluntarily,

knowingly, and intelligently,' the Court has not expressly held that the same standard governs

waiver in the civil context."), quoting *D.H. Overmyer*, 405 U.S. at 185-86.  Cato has not alleged

21

in its complaint that the settling defendants' waivers were not voluntary, knowing, and intelligent.[5]

But even if Cato somehow had the requisite personal knowledge to offer allegations about the waiver by unnamed non-parties, those allegations would be contradicted by the language that appears in the consents defendants sign. A settling defendant must represent that he "enters into this Consent voluntarily" and that "no threats, offers, promises, or inducements of any kind" have been made "to induce" the consent. Ex. 4, ¶ 7; Ex. 2, ¶ 6; *see Davies v. Grossmont Union High Sch. Dist.*, 930 F.2d 1390, 1395 (9th Cir. 1991) (waiver of constitutional right to run for elected office upheld as voluntary where the settlement agreement stated that the party "*knowingly* entered into the agreement"). A settling defendant must also acknowledge that "no promise or representation has been made by the Commission" regarding criminal liability for the acts described by the consent judgment. Ex. 4, ¶ 11; Ex. 2, ¶ 1.

Cato's complaint elides the crucial point that settling defendants agree to the no-deny provisions, along with the other elements of the consent. The Commission's negotiating position would have been clear from the outset—informing the public about the Commission's unwillingness to permit denials was the purpose of Rule 202.5(e). 37 FED. REG. at 25224. The settling defendants, like all defendants the Commission litigates against, were free to reject the deal offered by the Commission and negotiate a different deal or proceed to trial. *See Wright v. Foreign Service Grievance Bd.*, 503 F. Supp. 2d 163, 176 (D.D.C. 2007) (parties are "free to decline to enter the settlement agreement and pursue the regular statutory channels for review of agency decisions"). If they wished to deny allegations, they did not have to accept the

---

[5]  Cato makes a single allegation that the SEC "coerced" the manuscript author into settling, but does not allege any other facts to support that conclusory allegation. Am. Compl. ¶ 2. Particularly when the settling defendant is not a party and Cato has declined to identify that person, this fleeting accusation fails to satisfy *Twombly*'s plausibility standard.

"significant benefits" they received "in return," namely that "they are permitted to settle the complaint against them without admitting or denying the SEC's allegations and they often seek and receive concessions concerning the violations to be alleged in the complaint, the language and factual allegations in the complaint, and the collateral, administrative consequences of the consent decree." *Clifton*, 700 F.2d at 748. But they did accept those benefits and signed the consent, which was then memorialized in a judgment. If the settling defendants "felt that [their] First Amendment rights were burdened" by the no-deny provision, they "should not have bargained them away and signed the agreement." *Leonard*, 12 F.3d at 889-90. The "forum for protecting [their] free speech rights was the bargaining table, not the courtroom" years later. *Paragould Cablevision*, 930 F.2d at 1315.

When a waiver is knowing and voluntary, courts balance enforcement of that waiver with any public policy interests affected by such enforcement. *Town of Newton*, 480 U.S. at 392. But it does not contravene public policy to respect material terms in consent judgments and hold settling defendants to their bargains. To reiterate, the no-deny provisions do not expose settling defendants to new sanctions or penalties for denying the allegations, but rather leave open the possibility that the Commission may ask the original court to vacate the consent judgment. Am. Compl. ¶ 37. Upholding this provision, which would preclude a settling defendant from enjoying the benefits of the settlement without undertaking its material obligations, is consistent with public policy. *Erie Telecomms.*, 853 F.2d at 1097 (declining to permit a party "to withdraw from performing its obligations and from discharging its burdens, while it still continues to retain all of the benefits it received from the City as a result of the agreements"). There is nothing inequitable with this result, and the Court should reject the implication of Cato's complaint that every court that has entered a consent judgment with a no-deny provision somehow acted

unconstitutionally.  *See Williams*, 720 F.2d at 920 ("Judicial approval of a settlement agreement places the power and prestige of the court behind the compromise struck by the parties.").

By contrast, invalidating no-deny provisions after the fact is contrary to public policy. Consent judgments "are entered into by parties to a case after careful negotiation has produced agreement on their precise terms."  *United States v. Armour & Co.*, 402 U.S. 673, 681-82 (1971). The parties "waive their right to litigate the issues," saving "themselves the time, expense, and inevitable risk of litigation," and reach a compromise—"in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation."  *Id*.  While the Commission "gives up a number of advantages when" it enters into consent judgments, "including the filing of findings of fact and court opinions clearly setting forth the reasons for the result in a particular case," it is "able to conserve its own and judicial resources."  *Clifton*, 700 F.2d at 748.  Indeed, it is precisely because consent judgments conserve appropriated funds for federal agencies and the judiciary that there is a "strong federal policy favoring the[ir] approval and enforcement."  *SEC v. Wang*, 944 F.2d 80, 85 (2d Cir. 1991); *accord Evans v. Jeff D.*, 475 U.S. 717, 760 n.15 (1986) ("By lessening docket congestion, settlements make it possible for the judicial system to operate more efficiently and more fairly while affording plaintiffs an opportunity to obtain relief at an earlier time.").

To support this policy, and for consent judgments to function properly, the conditions upon which the parties have compromised "must be respected."  *Armour*, 402 U.S. at 682.  Thus, a consent judgment "should be strictly construed to preserve the bargained for position of the parties."  *Williams*, 720 F.2d at 920.  As the D.C. Circuit explained, "significant governmental interests would be impaired if courts too readily lifted" the terms of a consent decree "after a few years of compliance." *Clifton*, 700 F.2d at 748.  Undoing thousands of past consent judgments,

and impairing the Commission's ability to negotiate consent judgments in the future, as Cato

advocates, undermines these important interests.  Courts must be "reluctant to upset this balance

of advantages and disadvantages and require the dissolution of such consent decrees years after

they were originally entered" when it is not "clearly inequitable for the decree to continue in

effect."  *Id.*

   **B.  The no-deny provisions are consistent with the First Amendment.**

   While the no-deny provisions at issue reflect "self-imposed secrecy" as a consequence of

a settlement, and are "not the equivalent of a gag order," the provisions remain constitutional

even if viewed through the lens of a judicially imposed restriction on speech.  *Bond v. Utreras*,

585 F.3d 1061, 1077 (7th Cir. 2009).  The fact that the no-deny provisions bind the settling

defendants, but not Cato, results in a "less demanding standard than that established for

regulation of the press."  *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1074 (1991); *Nebraska

Press Ass'n v. Stuart*, 427 U.S. 539, 564-65 (1976) (orders prohibiting extrajudicial commentary

of trial participants are less restrictive than restraints on the press); *In re Dow Jones*, 842 F.2d

603, 608 (2d Cir. 1988) (distinguishing between orders directed at trial participants versus those

directed at the press).  There is a "fundamental difference between a gag order challenged by the

individual gagged and one challenged by a third party" because in the latter, there is no restraint

on the publisher.  *Dow Jones*, 842 F.2d at 609; *United States v. Brown*, 218 F.3d 415, 425 (5th

Cir. 2000) ("The Supreme Court and other Courts of Appeals have recognized a 'distinction

between participants in the litigation and strangers to it,' pursuant to which gag orders on trial

participants are evaluated under a less stringent standard than gag orders on the press.").

   Reflecting this difference, a judicial restraint on speech by trial participants "is

constitutional as long as it is properly justified."  *United States v. Morrow*, 2005 U.S. Dist. Lexis

8330, at *20-21 (D.D.C. 2005), citing *Pedini v. Bowles*, 940 F. Supp. 1020, 1023 (N.D. Tex.

1996) ("[O]rders imposing restrictions on attorneys, parties, and witnesses are entitled to considerably more deference" than restrictions on the press).  Judicial restraints often arise in the context of concerns about publicity prejudicing a defendant's right to a fair trial, and courts have fashioned standards for assessing such "gag orders" under which they examine whether the speech threatens the interest in a fair trial and whether the restriction is tailored to mitigate the potential harm.  *Dow Jones*, 842 F.2d at 610-11; *Morrow*, 2005 U.S. Dist. Lexis 8330, at *20-21. Analogized to this context, a restraint on speech related to a consent judgment should be upheld if the restrained activity threatens a competing interest and the "order has been narrowly drawn and is the least restrictive means available."  *Brown*, 218 F.3d at 425.

The competing interest here is the public interest in the Commission's effective enforcement of the securities laws, which no-deny provisions protect in two ways.  First, a chief objective in settling via a consent judgment with a no-deny provision, as opposed to a private settlement, is that the allegations serve as a record of the Commission's investigation and its determination that a violation of the securities laws occurred.  The allegations protect "the public by informing potential investors that a certain person has violated SEC rules in the past" and also more generally inform the public about the details of specific securities law violations.  *Clifton*, 700 F.2d at 748.  The description of the wrongdoing contained in the allegations serves a deterrent effect by "reminding defendants that they must obey the law in the future" and providing to market participants examples of violative conduct.  *Id.*; *cf. United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) ("Because economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidate[s] for general deterrence.") (internal quotation marks omitted; alteration in original).

26

If a settling defendant can deny the allegations in the complaint after consenting to a judgment, these interests would be undermined.  Denial would undercut the authority of the court that approved and entered the consent judgment.  *Citigroup Global Mkts.*, 752 F.3d at 295 ("As part of its review [of a proposed consent judgment], the district court will necessarily establish that a factual basis exists for the proposed decree.").  It would create public confusion about the accuracy of the allegations in the complaint, which are resolved without a trial.  It could also undermine confidence in the Commission's enforcement program by creating an unfair impression that there was no factual or legal basis for the Commission's enforcement action.  Moreover, since many Commission consent decrees impose injunctive relief, which a court must conclude is in the public interest, a denial of the allegations may undercut the predicate for the injunction, furthering eroding the terms of the settlement the parties negotiated.  *Id*. at 296-97 ("[W]hen a proposed consent decree contains injunctive relief, a district court must also consider the public interest in deciding whether to grant the injunction.").

Second, the elimination of no-deny provisions will alter the Commission's negotiating position in ways that could affect how it runs its enforcement program.  Settling by consent judgment allows the Commission to "manage risk" and obtain the best and most efficient result for the public interest.  *Citigroup*, 752 F.3d at 295.  Proceeding to trial and then a remedies hearing is "costly" and takes time.  *SEC v. Randolph*, 736 F.2d 525, 529 (9th Cir. 1984).  Settlement allows the Commission to obtain deterrent and remedial relief more quickly than it could at trial, which accelerates the process of returning money to investors and permits the Commission to pursue other investigations and enforcement actions.  *See* 15 U.S.C. 7246(a) (providing the Commission with flexibility to distribute financial sanctions, including penalties, to injured investors); *Official Comm. of Unsecured Creditors of WorldCom, Inc. v. SEC*, 467

27

F.3d 73, 82 (2d Cir. 2006) (describing the Commission's authority to return money to injured investors).  The Commission may determine that the "optimal allocation of its limited resources" is to enter into a consent judgment that awards most or all of what it could have obtained at trial. *SEC v. Citigroup Glob. Mkts., Inc.*, 673 F.3d 158, 165 (2d Cir. 2012); *Clifton*, 700 F.2d at 748 (describing the "balance of advantages and disadvantages" of settling).

But if the Commission cannot negotiate no-deny provisions, it may choose to proceed to trial more frequently—particularly since many defendants will not admit to factual allegations because of concern about the collateral estoppel effect of admissions on parallel private actions. *Citigroup*, 673 F.3d at 161; *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331-32 (1979).  More trials will strain the resources of the judiciary, contravening the "strong federal policy favoring the approval and enforcement of consent decrees."  *Wang*, 944 F.2d at 85; *Citizens for a Better Env't v. Gorsuch*, 718 F.2d 1117, 1126 (D.C. Cir. 1983) ("Not only the parties, but the general public as well, benefit from the saving of time and money that results from the voluntary settlement of litigation."); *In re Tutu Water Wells CERCLA Litig.*, 326 F.3d 201, 207 (3d Cir. 2003) (deferring to the "law's policy of encouraging settlement").  More trials will also affect the Commission's resources.  *See Board of Trade v. SEC*, 883 F.2d 525, 531 (7th Cir. 1989) ("Congress gives the [Commission] a budget, setting a cap on its personnel," which means that time spent on one case "means less time for something else."); *N.Y. State Dep't of Law v. FCC*, 984 F.2d 1209, 1213 (D.C. Cir.  1993) (stating that an agency is "best positioned to weigh the benefits of pursuing an adjudication against the costs to the agency (including financial and opportunity costs) and the likelihood of success").

The Commission's no-deny provisions are narrowly tailored to serve these interests.  To begin with, nothing requires a defendant to agree to these provisions; all defendants can reject

the Commission's proposed settlement if denial of allegations is more important than the other benefits they receive from settling. But when they do agree, the no-deny provision applies exclusively to the defendant who signs the consent. The no-deny provisions, on their face, are limited to one particular type of speech that relates to the government's specific interests—a defendant agrees "not to take any action or to make or cause to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis." Am. Compl. ¶ 37. A defendant can make private statements regarding the allegations without breaching the no-deny provision, as the anonymous manuscript author and the other settling defendants have already done. Am. Compl. ¶¶ 31-43. And a defendant is free to disparage the Commission more broadly, tweet generally about the Commission's enforcement program, or advocate for changes to Rule 202.5(e).

Moreover, the no-deny provisions provide escape valves even as to denials of the allegations. A defendant "may testify truthfully about any matter under oath in connection with a legal or administrative subpoena," which could include a denial of an allegation. And the no-deny provision has no effect on the defendant's "right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party." Am. Compl. ¶ 37. Thus, in a private action against the defendant for a violation of the securities laws (or some other legal proceeding), a defendant may deny the allegations in the complaint without breaching the no-deny provision.

Finally, the remedy for breach hews closely to the purpose that the no-deny provision serves. As explained above, if a defendant does not comply with the no-deny provision and publicly denies the allegations in the complaint, the Commission cannot seek or obtain a financial remedy or other sanction, such as a bar on participation in the industry. Rather, the

relief available to the Commission, per the terms of the consent, is the option to seek to vacate

the consent judgment, which would return the parties back to their original negotiating

provisions, if a court grants that relief.  Am. Compl. ¶ 37; Ex. 2, ¶ 11 & Ex. 4, ¶ 12.  Thus,

breaching a material term of the settlement that benefits the Commission, as well as the public,

results in the defendant losing the benefit of the bargain and having to face the possibility of trial

where the defendant will have ample opportunity to continue to deny the allegations.

## CONCLUSION

This Court should dismiss the amended complaint under Rule 12(b)(1) for lack of subject

matter jurisdiction and under Rule 12(b)(6) for failure to state a claim.

Dated:  <u>May 10, 2019</u>              Respectfully submitted,

By: _/s/ Matthew S. Ferguson_
MATTHEW S. FERGUSON
Senior Counsel
MELINDA HARDY
Assistant General Counsel
JEFFREY A. BERGER
Senior Litigation Counsel

U.S. Securities and Exchange Commission
Office of the General Counsel
100 F Street NE
Washington, DC 20549

FergusonMA@sec.gov
202-551-3840 (Ferguson)
Fax: 202-772-9263

## CERTIFICATE OF SERVICE

I hereby certify that on May 10, 2019, I served the foregoing Memorandum of Points and

Authorities in Support of Defendants' Motion to Dismiss upon the counsel for Plaintiff via ECF.


_/s/  Matthew S. Ferguson_
MATTHEW S. FERGUSON
Senior Counsel
U.S. Securities and Exchange Commission
Office of the General Counsel
100 F Street NE
Washington, DC 20549
FergusonMA@sec.gov
202-551-3840
Fax: 202-772-9263