## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CATO INSTITUTE, ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| v. ) | Civil Case No. 1:19-cv-00047-ABJ |
| ) | |
| UNITED STATES SECURITIES AND ) | |
| EXCHANGE COMMISSION, ET AL., ) | |
| ) | |
| *Defendants.* ) | |
| ) | |

## PLAITIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
## IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Robert J. McNamara (VA Bar No. 73208)
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, Virginia 22203
Telephone: (703) 682-9320
Facsimile: (703) 682-9321
Email: rmcnamara@ij.org

Jaimie N. Cavanaugh (MN Bar No. 399960)*
INSTITUTE FOR JUSTICE
520 Nicollet Mall, Suite 550
Minneapolis, Minnesota 55402
Telephone: (612) 435-3451
Facsimile: (612) 435-5875
Email: jcavanaugh@ij.org
Attorneys for Plaintiff
*admitted *pro hac vice*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ..................................................................................................... iii

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 2

I.   CATO HAS STANDING ................................................................................................. 2

    A.   Cato Is Being Injured Now ............................................................................... 3

    B.   Cato Has Standing To Challenge The Gag Orders As A Would-Be Publisher. ...... 5

II.  THIS COURT CAN ADJUDICATE THIS CASE WITHOUT "INVAD[ING]" THE JURISDICTION OF ANY
    OTHER COURT. ........................................................................................................ 9

III. THE COMPLAINT STATES A VALID CLAIM FOR RELIEF ............................................... 13

    A.   The SEC's Arguments Entirely Ignore The Unconstitutional-Conditions
        Doctrine ......................................................................................................... 13

    B.   The SEC's Use Of Gag Orders Violates The First Amendment. ........................ 17

CONCLUSION .................................................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*4:20 Comms., Inc. v. Paradigm Co.*,
   336 F.3d 775 (6th Cir. 2003)..................................................................... 12

*Al-Aulaqi v. Panetta*,
   35 F. Supp. 3d 56 (D.D.C. 2014) ............................................................... 13

*All. for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.*,
   430 F. Supp. 2d 222 (S.D.N.Y. 2006), *aff'd* 570 U.S. 205 (2013)............................ 15

*Application of Dow Jones & Co., Inc.*,
   842 F.2d 603 (2d Cir. 1988)....................................................................... 6

*Autor v. Pritzker*,
   740 F.3d 176 (D.C. Cir. 2014) ................................................................... 13

*Citizens United v. FEC*,
   558 U.S. 310 (2010)................................................................................ 17

*Crawford-El v. Britton*,
   93 F.3d 813 (D.C. Cir. 1996) ................................................................... 3, 4

*Deutsche Bank Nat'l Trust Co. v. FDIC*,
   717 F.3d 189 (D.C. Cir. 2013) ................................................................... 6

*Dolan v. City of Tigard*,
   512 U.S. 374 (1994)............................................................................ 9, 10

*EEOC v. Nat'l Children's Ctr., Inc.*,
   98 F.3d 1406 (D.C. Cir. 1996) ................................................................. 20

*Empagran, S.A. v. Hoffman-La Roche, Ltd.*,
   453 F. Supp. 2d 1 (D.D.C. 2006) ............................................................. 12

*Fiberlight, LLC v. Nat'l R.R. Passenger Corp.*,
   81 F. Supp. 3d 93 (D.D.C. 2015) .............................................................. 6

*FOCUS v. Allegheny Cty. Court of Common Pleas*,
   75 F.3d 834 (3d Cir. 1996)....................................................................... 6

*Ford v. City of Huntsville*,
   242 F.3d 235 (5th Cir. 2001)..................................................................... 6

*Kleindienst v. Mandel,
  408 U.S. 753 (1972) ............................................................................ 2, 5

Koontz v. St. John River Water Mgmt. Dist.,
  570 U.S. 595 (2013) ......................................................................... 10, 15

*Legal Servs. Corp. v. Velazquez,
  531 U.S. 533 (2001) ............................................................................... 14

Louisiana Pacific Corp. v. Beazer Materials & Servs., Inc.,
  842 F. Supp. 1243 (E.D. Cal. 1994) ..................................................... 15

McVicker v. King,
  266 F.R.D. 92 (W.D. Pa. 2010) ............................................................... 8

Nat'l Inst. of Family and Life Advocates v. Becerra,
  138 S. Ct. 2361 (2018) ........................................................................... 18

O'Hare Truck Serv., Inc. v. City of Northlake,
  518 U.S. 712 (1996) ............................................................................... 13

Pansy v. Borough of Stradsburg,
  23 F.3d 772 (3d Cir. 1994) ...................................................................... 6

Perry v Sindermann,
  408 U.S. 593 (1972) ............................................................................... 13

*Pitt News v. Pappert,
  379 F.3d 96 (3d Cir. 2004) ............................................................. passim

Police Dep't of City of Chicago v. Mosley,
  408 U.S. 92 (1972) ................................................................................. 17

Pursuing America's Greatness v. FEC,
  831 F.3d 500 (D.C. Cir. 2016) ............................................................... 12

Reed v. Town of Gilbert,
  135 S. Ct. 2218 (2015) ........................................................................... 18

Retail Dig. Network, LLC v. Appelsmith,
  810 F.3d 638 (9th Cir. 2016) ................................................................... 7

SEC v. ConnectAJet.com,
  No. 09-cv-01742-B  (N.D. Tex.) ............................................................ 12

*SEC v. Provident Royalties, LLC*,
No. 09-cv-01238 (N.D. Tex.) ............................................... 11

*SEC v. Prudential Sec., Inc.*,
136 F.3d 160 (D.C. Cir. 1998) ............................................... 6

*SEC v. U.S. Global Nanospace, Inc.*,
No. 06-cv-00680-Y, (N.D. Tex.)............................................... 11

*Simon & Schuster, Inc. v. Members of the N.Y. State Crime Victims Bd.*,
502 U.S. 105 (1991) ............................................... 7, 18

*Sorrells v. Garfinchel's*,
565 A.2d 285 (D.C. 1989)............................................... 8

*Sourovelis v. City of Philadelphia*,
103 F. Supp. 3d 694 (E.D. Pa. 2015) ............................................... 15

*\*Stephens v. Cty. of Albemarle*,
No. 3:04CV00081, 2005 WL 3533428 (W.D. Va. Dec. 22, 2005)................................... 14, 15

*United States v. Playboy Entm't Grp.*,
529 U.S. 803 (2000) ............................................... 19

*Virginia Pharmacy Bd. v. Virginia Consumer Counsel*,
425 U.S. 748 (1975) ............................................... 5

## Other Authorities

Securities and Exchange Commission, PRESS RELEASE, *SEC Adds Defendant to Ponzi Scheme
Case, Charging Former Consultant to NJ Affordable Homes for Role in Defrauding Investors*,
*available at* https://www.sec.gov/litigation/litreleases/2007/lr20116.htm
(last visited May 23, 2019)............................................... 16

Securities and Exchange Commission, PRESS RELEASE, *SEC Charges Bitcoin-Funded Securities
Dealer and CEO*, available at https://www.sec.gov/news/press-release/2018-218
(last visited May 23, 2019)............................................... 16

## INTRODUCTION

For more than forty years, the Securities and Exchange Commission has leveraged its power of prosecutorial discretion to coerce civil and administrative defendants into agreeing to lifetime gag orders prohibiting them from ever publicly questioning (or allowing another to publicly question) the truth of any of the allegations the SEC has made against them. Settling defendants need not admit the truth of any allegations against them, but they *are* required to promise never to make a public statement casting doubt on any of those allegations.

This policy currently stands in the way of the public advocacy of the Washington, D.C.-based think tank the Cato Institute. Cato (among other things) advocates against coercive plea bargains and in favor of criminal-justice reform, and it has in the past successfully advanced its arguments by highlighting the stories of people it believes were wrongly accused, featuring such individuals as speakers at events and writing about the stories of victims of alleged overzealous enforcement. Cato has been contacted by a number of former SEC defendants who want to make public complaints about the SEC's conduct in their cases. Am. Compl. ¶¶ 42–48. Cato wants to amplify these stories: It wants to host events at which these people speak, it wants to publish blog posts or op-eds by its employees detailing their stories, and, in one case, it wants to publish a book written by one of these defendants recounting his first-person account of his tangle with the SEC. *Id*. ¶¶ 2–3, 5, 39, 42–48, 66–68. But Cato cannot do so. Each of these individuals, as a condition of avoiding further litigation expense and potential liability, was required to enter into a permanent and unconditional gag order preventing them from making the critical statements they want to make. *Id.* ¶¶ 36, 43. None of these people are willing to risk violating their agreements with the SEC, and so they (and Cato) have remained silent. *Id.* ¶¶ 42–48.

The essence of the complaint here is that this is unconstitutional. The SEC cannot condition its enormous prosecutorial discretion on defendants' agreement to make or refrain

from making particular public statements, and it cannot arrogate to itself the power to police its victims' speech for the rest of their lives. Cato therefore brings this lawsuit to secure a declaratory judgment allowing it to publicly criticize the SEC's behavior by publicizing the stories the agency has so far successfully suppressed.

## **ARGUMENT**

The SEC argues that this lawsuit must be dismissed on the pleadings either because this Court lacks jurisdiction or because the complaint itself fails to state a plausible claim under the First Amendment. Neither argument has merit.

The SEC's motion must be denied for three separate reasons. First, Cato has standing, and the SEC's brief fails to engage with Cato's actual injury: that it is currently being forced to refrain from constitutionally protected speech. Second, this Court can adjudicate Cato's claims without "invad[ing]" the jurisdiction of any courts that presided over the SEC's initial enforcement actions. And, finally, the complaint states a valid claim under the First Amendment, and the SEC cannot meet the burden the government bears in a First Amendment case in the context of a Rule 12(b)(6) motion.

### I.    CATO HAS STANDING.

Cato has standing under the First Amendment both as a listener and as a speaker. It has standing as a listener because it wants to hear from people who are subject to the SEC's gag orders by inviting them to panel discussions and similar events. Am. Compl. ¶¶ 5, 41–43, 46–48; 67; *see also Kleindienst v. Mandel*, 408 U.S. 753, 764 (1972) (finding professors had standing under the First Amendment to challenge denial of guest speaker's visa application). Similarly, Cato has standing as a would-be speaker because it wants to publish books and other materials written by or recounting the stories of people subject to the SEC's gag orders. Am. Compl. ¶¶ 2–3, 34–36, 40–41, 44, 66, 68; *see, e.g.*, *Pitt News v. Pappert*, 379 F.3d 96, 102–05 (3d Cir. 2004)

(Alito, J.) (finding newspaper had standing to challenge statute prohibiting alcohol manufacturers from purchasing advertisements in the paper). The SEC's gag orders stand in the way of Cato's activities, and an order from this Court declaring those orders unconstitutional or unenforceable would allow Cato to speak and to hear from the speakers of its choice. That is a redressable injury in fact.

In attempting to argue to the contrary, the SEC makes two different points: First, that any future attempt on the part of the SEC to enforce these gag orders is simply too remote to support standing here and, second, that a publisher like Cato cannot challenge orders that restrict the speech of third parties. Neither argument is correct.

### A.      Cato Is Being Injured Now.

The SEC's main argument is that Cato lacks standing because any enforcement action on the part of the SEC would only happen at an uncertain time in the future. *See* Mem. in Supp. at 10–13. As the SEC would have it, the gag orders that block Cato's proposed First Amendment activities are simply "a clause in a negotiated contract, which contains a specified remedy for breach." *Id.* at 11. Because the SEC says it is "conjectural or hypothetical" that it would actually enforce these gag orders, this suit does not present a ripe controversy that can be redressed by this Court. *Id.* at 12 (citation omitted).

This argument fails because it ignores the actual injury alleged by the amended complaint. Cato's alleged injury is not that the SEC *might* do something in the future. Cato's alleged injury is happening now: The prospect of the SEC's enforcement of these gag orders is chilling the speech of individuals who would (the complaint alleges) otherwise be speaking today. The standard for determining whether this sort of chilling effect gives rise to a cognizable injury is whether official conduct would "chill or silence 'a person of ordinary firmness' . . .

from speaking." *Crawford-El v. Britton*, 93 F.3d 813, 826 (D.C. Cir. 1996). The SEC's brief fails to even acknowledge that the chilling-effect doctrine exists.

This failure to engage with this doctrine dooms the SEC's standing arguments because the complaint alleges that Cato's speech (and the speech of individuals who would otherwise be cooperating with Cato's public statements) is being reasonably chilled. It alleges that the SEC enforces these gag-order agreements: that it polices the speech of former defendants and demands retractions when those defendants say things the SEC does not like. Am. Compl. ¶ 30. And it alleges that fear of similar actions by the SEC is the only reason these people refuse to speak publicly at Cato events or allow Cato to publicize their stories. *E.g.*, *id.* ¶¶ 43–44. Taken together, these allegations establish that Cato's speech is being chilled. But the SEC does not acknowledge these allegations, much less explain why these fears are unreasonable or why people of ordinary firmness should feel comfortable speaking with and through Cato notwithstanding their gag orders.

This failure to engage with Cato's present injury pervades the SEC's brief. The SEC says, for example, that Cato's injuries are not redressable by this Court because, if it loses here, it could simply move to re-open every single settlement the SEC has ever entered into on the grounds that all of them contain an invalid term. Mem. in Supp. at 13. But Cato's injury is not that the SEC might seek to re-open a settlement in the future. Cato's injury is that people are refusing to speak at the events it wants to hold or to let Cato publish their stories because of a well-grounded fear that the SEC will retaliate against them for doing so. Even assuming the SEC is right that a ruling in Cato's favor would allow it to re-open every settlement that contains an unconstitutional condition (which, as discussed below, Cato does not concede), that does not matter. Right now, Cato cannot engage in protected speech because would-be speakers are afraid

that the SEC will punish them for their speech. Am. Compl. ¶¶ 39–41. A judgment from this

Court holding that the SEC cannot punish people for speech of this sort would solve the problem:

It would mean that Cato would be able to speak freely. The purpose of this lawsuit is not to

enjoin the SEC from attempting to punish anyone for violating the securities laws; it is to remove

the SEC's current chilling effect on Cato's speech. The SEC's failure to grapple with this basic

fact means its motion must be denied.

> **B.      Cato Has Standing To Challenge The Gag Orders As A Would-Be Publisher.**

The SEC also contends that Cato cannot maintain this action because Cato is not the only

speaker involved; instead, Cato wants to publish and host the public speech of third parties who

have direct experience with the SEC. Mem. in Supp. at 13–15. According to the SEC, only the

person actually bound by one of its gag orders is allowed to challenge it—none of the other

people affected by the speech restriction can sue, whether they are would-be publishers or

would-be listeners. *Id.* But this is simply not true: Third parties (whether they are would-be

publishers, would-be hosts, or would-be listeners) can and do challenge restrictions on other

people's speech. *See, e.g. Virginia Pharmacy Bd. v. Virginia Consumer Counsel*, 425 U.S. 748,

756 (1976) (holding that "where a [willing] speaker exists, . . . the protection afforded by [the

First Amendment] is to the communication, to its source *and to its recipients* both") (emphasis

added); *Kleindienst*, 408 U.S. at 764 (finding professors had standing under the First Amendment

where visa denial prevented them from hosting guest speaker); *Pitt News*, 379 F.3d at 105–06

(finding newspaper had standing under the First Amendment where law prevented alcohol

retailers from buying ads in the paper). Cato has alleged it has standing in all of these respects: It

wants to host public events at which currently gagged individuals speak; it wants to engage in its

own speech detailing the stories of currently gagged individuals; and it wants to publish and publicize the speech of currently gagged individuals.

Cato has standing to press its claims here, and none of the cases the SEC relies upon say otherwise: Instead, they hold only that a nonparty cannot bring suit to *enforce* a government consent decree (unless the decree expressly creates private rights to sue) or bring a lawsuit about a contract against the wishes of the actual parties to that contract. *See Deutsche Bank Nat'l Trust Co. v. FDIC*, 717 F.3d 189, 194–95 (D.C. Cir. 2013) (refusing to allow third-party intervention to litigate which defendant would be liable under a contract to which intervenors were not a party); *SEC v. Prudential Sec., Inc.*, 136 F.3d 160, 161 (D.C. Cir. 1998) (refusing to entertain claim that Prudential had violated the terms of its consent order with the SEC); *Fiberlight, LLC v. Nat'l R.R. Passenger Corp.*, 81 F. Supp. 3d 93, 111 (D.D.C. 2015) (refusing to hear claim where plaintiff sued both parties to a contract seeking the contract's invalidation).

The rule is very different, though, in situations like this, where the third party is challenging a gag order whose subject would otherwise be willing to speak. *See, e.g.*, *FOCUS v. Allegheny Cty. Court of Common Pleas*, 75 F.3d 834, 838–39 (3d Cir. 1996) ("[C]ourts have found that third parties have standing to challenge a gag order only when there is reason to believe that the individual subject to the gag order is willing to speak and is being restrained from doing so."). Indeed, courts "have routinely found . . . that third parties have standing to challenge protective orders and confidentiality orders in an effort to obtain access to information or judicial proceedings." *Pansy v. Borough of Stradsburg*, 23 F.3d 772, 777 (3d Cir. 1994) (footnote omitted); *see also Ford v. City of Huntsville*, 242 F.3d 235, 241 (5th Cir. 2001); *Application of Dow Jones & Co., Inc.*, 842 F.2d 603, 607 (2d Cir. 1988). Cato is, of course, a third party to the actual settlement agreements at issue here, but it is exactly the sort of third

party courts routinely allow to bring claims like this: a would-be publisher suing to eliminate a legal restriction that prevents it from publishing particular information or hosting particular speakers at events.

Indeed, it is far from unusual in the First Amendment context for a publisher to bring a claim that hinges on the free-speech rights of others whose speech it wants to publish. *Simon & Schuster, Inc. v. Members of the N.Y. State Crime Victims Bd.*, 502 U.S. 105, 109 (1991); *Retail Dig. Network, LLC v. Appelsmith*, 810 F.3d 638, 647 (9th Cir. 2016); *Pitt News*, 379 F.3d at 105–06.

These First Amendment cases are almost entirely absent from the SEC's argument. To the extent the SEC acknowledges them—which it does only in a footnote, *see* Mem. in Supp. at 11 n.2—it claims that they do not apply here because they stand only for the proposition that a publisher may bring suit if it would itself be "directly subject . . . to some sanction, penalty, or restriction because of its role as a publisher." *Id*. This argument is wrong, as a matter of both law and fact.

The SEC's argument is wrong as a matter of law because it mischaracterizes the caselaw. The SEC claims, for example, that *Pitt News* held that "a newspaper had standing to challenge a law prohibiting it from receiving payments for running alcoholic beverage advertisements." *Id*. (citing *Pitt News*, 379 F.3d at 105–06). This is not true: The law challenged in *Pitt News* did not directly regulate the plaintiff newspaper at all. To the contrary, a government official "testified that [the statute was] enforceable only against advertisers and not against the media." *Pitt News*, 379 F.3d at 102. The paper's injury did not sound in its own fear of being fined; instead "the paper, in order to protect its advertisers [from government sanction], felt compelled to stop accepting alcoholic beverage advertisements." *Id.* at 103. Accurately described, *Pitt News*

presents almost precisely the same scenario as this case: Government officials threatened a speaker with punishment for speaking, a publisher refrained from publishing the assertedly illegal speech, and then the publisher (rather than the speaker) sued to test the validity of the restriction. These parallels mean that the SEC's failure to correctly describe *Pitt News* is simply fatal to its legal argument here: Publishers can and do litigate about laws that forbid the speech of those they want to publish. *Cf. McVicker v. King*, 266 F.R.D. 92, 95 (W.D. Pa. 2010) ("The trend among courts which have been presented with this question is to hold that entities such as newspapers, internet service providers, and website hosts may, under the principle of *jus tertii* standing, assert the [First Amendment] rights of their readers and subscribers [to remain anonymous].").

The SEC's argument is also flawed as a matter of fact because the assertion that Cato could not be sanctioned for publishing the speech of the gagged individuals is simply incorrect. On the SEC's account of things, the gag orders challenged here are a perfectly valid "clause in a negotiated contract" between the SEC and a defendant. Mem. in Supp. at 11. But if that is true, Cato's efforts to aid these defendants in violating their gag orders would be an intentional interference with that contract—a tort recognized by District of Columbia courts. *See Sorrells v. Garfinchel's*, 565 A.2d 285, 289 (D.C. 1989) (listing elements). In other words, even if the SEC is correct that publishers only have standing where they themselves are at risk of punishment (which it is not), Cato does in fact face that risk as a matter of law.

*             *             *

The injury alleged by the amended complaint is simple: Cato wants to speak and to host the speech of others, and it wants to do so today. It cannot do so today because the would-be speakers fear retaliation from the SEC. A declaration from this Court holding that the SEC

cannot retaliate against people who violate their unconstitutional gag orders would remedy Cato's injury. That is more than enough to support standing under the First Amendment, and the SEC's motion should therefore be denied.

## II.   THIS COURT CAN ADJUDICATE THIS CASE WITHOUT "INVAD[ING]" THE JURISDICTION OF ANY OTHER COURT.

The SEC further contends that this Court should dismiss the amended complaint because resolving Cato's claims would require it to "invade the jurisdiction" of other federal courts. *See* Mem. in Supp. at 15–20. But, once again, the SEC's arguments both misconceive the nature of Cato's alleged injury and misstate the relevant factual background.

In short, the SEC's argument is that the gag orders complained of all stem from consent judgments entered by other federal district courts, and that the appropriate remedy would be to seek post-judgment relief from those courts rather than asking this Court to invalidate the judgments or otherwise rule that they are unenforceable. This is incorrect for at least four reasons.

***First***, nothing in Cato's complaint asks this Court to invalidate a judgment of another court. As explained more fully below, the essence of Cato's legal theory is that the SEC's demand that defendants give up their First Amendment rights as a condition of settling any civil or administrative enforcement action is an unconstitutional condition. And when government officials abuse their power by demanding unconstitutional conditions, the proper remedy is to eliminate that condition—not to invalidate the entire agreement and send the parties back to square one.

This general rule is most easily seen in the context of takings: "Under the well-settled doctrine of 'unconstitutional conditions,' the government may not require a person to give up a constitutional right—[like] the right to receive just compensation when property is taken for a

public use—in exchange for a discretionary benefit conferred by the government where the benefit sought has little or no relationship to the property." *Dolan v. City of Tigard*, 512 U.S. 374, 385 (1994). If a person complies with the government's demand that she turn over her property in exchange for a discretionary benefit, the appropriate remedy is to force the government to pay just compensation for the property taken—*not* to invalidate the permit itself and leave the parties to start afresh. *Koontz v. St. John River Water Mgmt. Dist.*, 570 U.S. 595, 609 (2013). If no property is actually taken—that is, if the government demands property in exchange for a discretionary act but the property owner refuses—the Supreme Court has reserved the question of whether *damages* are available as a remedy but has been clear that an order removing the unconstitutional condition is appropriate. *Id.*; *see also id.* at 620 (Kagan, J., dissenting) (agreeing with the majority that "when the government denies a permit because an owner has refused to accede to [an unconstitutional] demand . . . [t]he owner is entitled to have the improper condition removed" but not necessarily to damages).

The same holds true in other contexts: In *Koontz*, the Supreme Court listed unconstitutional-conditions cases touching on everything from public employment to public healthcare, and in all of them (whether the plaintiffs won or lost) the remedy sought was the invalidation of *the unconstitutional condition itself*, not the elimination of the underlying discretionary transaction. *Id.* at 608 (collecting cases). So too here. If Cato is correct that conditioning the SEC's exercise of its enforcement discretion on a defendant's future silence is an unconstitutional condition, then the appropriate remedy is the elimination of that condition— not the invalidation of the underlying consent decree itself.

**Second**, while the amended complaint alleges that the SEC enforces its gag orders, it alleges that the SEC does so by mechanisms like threat letters or demands that former defendants

issue retractions when the SEC disapproves of their statements, not by asking the court that heard

the original enforcement action to impose punishment for the defendant's speech. Am. Compl.

¶¶ 30.[1] An order declaring that the SEC violates the Constitution by sending these threats or

making these demands does not "invade" the jurisdiction of any court.

*Third*, even if the SEC were correct that this Court cannot properly rule on the validity of

a gag order that has been incorporated into the judgment of another federal court, it is simply not

true that all of the gag orders obtained by the SEC have been incorporated into a federal-court

judgment. For one thing, as alleged by the amended complaint, the SEC demands these orders

not just in civil enforcement actions but also in administrative actions. Am. Compl. ¶¶ 2, 22–23,

29, 51. But more broadly, the SEC is simply incorrect to suggest that courts always enter final

judgments incorporating its settlement agreements (and thereby its gag orders) by reference. A

simple PACER search reveals that the SEC sometimes enters into agreements with settling

defendants in which the agreement contains a gag provision but the actual judgment entered by

the court does not. Indeed, sometimes in the very same action, judgments entered as to some

defendants will incorporate the SEC's settlement agreement by reference while other judgments

do not. *Compare SEC v. U.S. Global Nanospace, Inc.*, No. 06-cv-00680-Y (ECF 7) (N.D. Tex.

Oct. 3, 2006) (agreed final judgment that does not incorporate a consent agreement by reference)

*with id.* (ECF 12 at 4) (N.D. Tex. Nov. 21, 2006) (agreed final judgment incorporating consent

agreement by reference); *compare also SEC v. Provident Royalties, LLC*, No. 09-cv-01238 (ECF

376-1 & 376-2) (N.D. Tex. June 7, 2012) (filed consent agreements as to two defendants

containing gag provisions), *with id.* (ECF 377 & 378) (N.D. Tex. June 7, 2012) (final judgments

---

[1] As far as Cato has been able to determine, the SEC has never actually gone before a federal judge and asked for one of these gag orders to be enforced; they are instead enforced through the sort of threats detailed in the Amended Complaint.

as to the same defendants that do not incorporate these consent agreements by reference); *SEC v. ConnectAJet.com*, No. 09-cv-01742-B (ECF 91) (N.D. Tex. May 4, 2012) (final judgment not incorporating a settlement agreement by reference). To be sure, the SEC's settlement agreements seem to always (or nearly always) *say* that the agreement will be made a part of the final judgment, but that agreement is not always reflected in the judgments entered. And while a federal court can certainly incorporate the parties' agreement into its final order if it so chooses, the parties cannot by agreement make a court's judgment says something that it does not say. *Cf. 4:20 Comms., Inc. v. Paradigm Co.*, 336 F.3d 775, 779 (6th Cir. 2003) (noting that parties cannot use Rule 60 to seek a federal court's interpretation of a settlement agreement that was not expressly incorporated into the final judgment).

**Fourth** and finally, even if Rule 60 relief were available to seek review of each and every one of the SEC's gag orders, it would not be available *to Cato*. Cato was not a party to any of these actions and so could not seek modifications of the judgments at all. *See, e.g., Empagran, S.A. v. Hoffman-La Roche, Ltd.*, 453 F. Supp. 2d 1, 7 & n.6 (D.D.C. 2006) (stating the general rule that nonparties lack standing to seek relief under Federal Rule of Civil Procedure 60). The upshot of the SEC's argument is that rather than seek relief in this Court, Cato should vindicate its First Amendment rights by filing serial Rule 60 motions, all of which will be denied as a matter of law, in district courts all across the country for every single speaker it wants to work with, now or in the future. But the law does not require Cato to delay its speech while engaging in such fruitless pursuits: "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Pursuing America's Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016) (quotation omitted). Cato is suffering First Amendment harms

now, and its only plausible avenue of relief lies in this Court. The SEC's motion should therefore be denied.

### III.    THE COMPLAINT STATES A VALID CLAIM FOR RELIEF.

Cato has properly pleaded a justiciable claim under the First Amendment. In arguing otherwise, the SEC entirely ignores the doctrine at the heart of Cato's complaint—the unconstitutional-conditions doctrine—and inappropriately asks this Court to resolve evidentiary questions about whether it can meet its burden of proof under the First Amendment. But at this stage of the proceedings, the only question is whether the allegations of the amended complaint, taken as true, state a claim for relief. *Al-Aulaqi v. Panetta*, 35 F. Supp. 3d 56, 67 (D.D.C. 2014). As demonstrated below, Cato's allegations are more than sufficient to meet this standard.

### A.    The SEC's Arguments Entirely Ignore The Unconstitutional-Conditions Doctrine.

The SEC's motion asserts that the gag orders challenged here must be constitutional because the settling defendants agreed to them. Mem. in Supp. at 21–25. In other words, the SEC's contention is that it can condition the exercise of its prosecutorial discretion on anything it wishes without constitutional scrutiny.

This is not so. The unconstitutional-conditions doctrine—a doctrine mentioned nowhere in the SEC's brief—prevents government officials from using their enormous discretionary powers to coerce citizens into trading fundamental rights for discretionary government largesse. *E.g.*, *O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712, 717 (1996); *Autor v. Pritzker*, 740 F.3d 176, 183 (D.C. Cir. 2014) (holding that First Amendment unconstitutional-conditions claim survived motion to dismiss). Even where the government has no obligation to offer a benefit, once it chooses to do so, it cannot condition the exercise of that benefit on a waiver of a constitutionally guaranteed right. *Perry v Sindermann*, 408 U.S. 593, 597 (1972).

For example, in *Legal Services Corp. v. Velazquez*, the Supreme Court struck down a law that conditioned funding for certain legal services on an agreement not to raise certain legal claims, on the ground that the condition violated the First Amendment. 531 U.S. 533, 548 (2001). Of course, Congress did not have to fund legal services, but once it did so, its voluntary decision to fund those services could not be "aimed at the suppression of ideas thought inimical to the Government's own interest." Id. at 549.

The SEC's decision to trade its enforcement discretion for defendants' agreement to lifetime gag orders similarly violates the guarantees of the First Amendment. Cato has alleged that the SEC requires anyone who wants to settle a civil or administrative enforcement action to agree never to publicly question the truth of any of the SEC's allegations against them. Am. Compl. ¶¶ 1, 21–24, 29. As the SEC itself admits, an offer to settle an enforcement action carries "significant benefits." Mem. in Supp. at 23–24; *see also* Am. Compl. ¶¶ 32, 42. And the SEC is trading these benefits—such as saving money on litigation expenses and avoiding the delays and risks of trial—for something it could never obtain in the underlying litigation: The permanent waiver of a defendant's right to free speech.

It therefore is no answer to say, as the SEC does, that the gag orders are valid because the settling defendants waived their First Amendment rights. *See* Mem. in Supp. at 21–25. Of course they did. The question is whether the SEC could *constitutionally demand* such a waiver in exchange for exercising its prosecutorial discretion. If the mere fact that a defendant acquiesced to the government's demand was enough to immunize a settlement from scrutiny, then the unconstitutional-conditions doctrine could never apply to settlements. And yet courts across the country have held that it does. In *Stephens v. County of Albermarle*, for example, a group of concerned citizens sued to obtain information about an environmental case that the local

14

government had resolved via a settlement that included a gag provision. *See* No. 3:04CV00081, 2005 WL 3533428, at *10 (W.D. Va. Dec. 22, 2005). The court denied the government's motion to dismiss, explaining that it would "vitiate the unconstitutional conditions doctrine to conclude that it cannot apply to an offer of settlement." *Id.* at *6. The court refused to "create a safe haven for impermissible restrictions" merely because the government went "through the formality of a settlement." *Id.* The Eastern District of Pennsylvania has similarly allowed challenges to settlements entered in Philadelphia's civil-forfeiture program explaining that the settlements at issue were not truly voluntary because the "choice between the rock and the whirlpool" is "no choice" at all. *Sourovelis v. City of Philadelphia*, 103 F. Supp. 3d 694, 707 (E.D. Pa. 2015). And *Louisiana Pacific Corp. v. Beazer Materials & Servs., Inc.*, 842 F. Supp. 1243, 1251 (E.D. Cal. 1994), applied the unconstitutional-conditions doctrine to a settlement extracted by the EPA, although the court ultimately upheld the agreement. To the extent the SEC's argument is that the unconstitutional-conditions doctrine simply cannot apply to settlements, that argument has been roundly rejected by the federal courts.

And the doctrine should apply with even more force where, as here, the government is acting for the express purpose of protecting its own reputation at the expense of others' First Amendment rights. Am. Compl. ¶¶ 17–20, 80–81, 85–86 (alleging purpose of gag orders); *accord* Mem. in Supp. at 5 (admitting that the purpose of demanding gag orders is to prevent the creation of a public perception that the SEC's allegations were unfounded); *see also All. for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.*, 430 F. Supp. 2d 222, 258 (S.D.N.Y. 2006), *aff'd* 570 U.S. 205 (2013) ("[T]he government should not throw its immense delegated weight into the public arena through strategies and means that improperly arrogate or shift public power,

Case 1:19-cv-00047-ABJ   Document 13   Filed 05/24/19   Page 21 of 26


in particular when the net consequence may be to promote the government's own view at the expense of other perspectives . . . .").

The SEC's uniform demand for blanket, perpetual gag orders is just such an effort to "promote the government's own view at the expense of other perspectives." Take, for example, the two sample judgments referenced by the SEC in its motion. *See* Mem. in Supp. Ex. 1 (Judgment as to Patrick Brunner and 1Pool Ltd.); *id.* Ex. 3 (Judgment as to Kenneth Lagonia). Both judgments reflect the SEC's agreement to refrain from seeking further penalties in exchange for the defendants' agreement never to publicly challenge the allegations made against them. But in both cases, the result of that agreement was not simply public silence about those allegations: To the contrary, in both cases, the SEC had issued a press release trumpeting the allegations it made against each defendant—press releases it hosts on its website to this day. *See* Securities and Exchange Commission, PRESS RELEASE, *SEC Charges Bitcoin-Funded Securities Dealer and CEO*, *available at* https://www.sec.gov/news/press-release/2018-218 (last visited May 23, 2019) (detailing allegations against Brunner); Securities and Exchange Commission, PRESS RELEASE, *SEC Adds Defendant to Ponzi Scheme Case, Charging Former Consultant to NJ Affordable Homes for Role in Defrauding Investors*, *available at* https://www.sec.gov/litigation/litreleases/2007/lr20116.htm (last visited May 23, 2019) (detailing allegations against Lagonia). In neither case did the SEC prove its allegations; in neither case did the defendants admit those allegations. Instead, the SEC settled both cases *conditioned* on the defendants' promise to let the SEC's press release serve as the last word on the defendants' conduct. This is not an outcome that would be available to the SEC in the underlying litigation—no matter what the SEC proved or did not prove, it would not be able to secure a final judgment preventing the defendants from criticizing its behavior. Instead, the SEC traded the powers it did

have (the power to seek greater or lesser financial punishment; the power to draw out litigation or draw it to a close) for something it could not otherwise have obtained: The defendants' permanent silence.

Simply put, this is exactly why the unconstitutional-conditions doctrine exists: to prevent the government from transmuting the power to enforce the laws into the power to restrict the scope of and participants in the public debate about the government's behavior. *Cf. Citizens United v. FEC*, 558 U.S. 310, 356 (2010) ("When Government seeks to use its full power, including the criminal law, to command where a person may get his or her information or what distrusted source he or she may not hear, it uses censorship to control thought. This is unlawful."). The SEC's refusal to acknowledge the unconstitutional-conditions doctrine—much less explain why its gag orders survive under it—fatally undermine its arguments, and its motion should therefore be denied.

### B.    The SEC's Use Of Gag Orders Violates The First Amendment.

Apart from being the product of the SEC's unconstitutional abuse of its enforcement and settlement discretion, the SEC's gag orders in practice operate as content-based restrictions on speech. As alleged in the amended complaint, the SEC enforces these agreements by monitoring former defendants' public statements and sending threat letters and demands for retraction when it deems a defendant to have made statements at odds with his or her gag order. Am. Compl. ¶ 30. That is unconstitutional. The First Amendment does not allow government officials to instruct private citizens that they are not allowed to say things those officials dislike— particularly when there has never been a determination about whether the statements in question are true or not.

Content-based burdens on speech are presumptively invalid. *Simon & Schuster, Inc.*, 502 U.S. at 116; *Police Dep't of City of Chicago v. Mosley*, 408 U.S. 92, 95 (1972) ("But, above all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content."). In fact, government-imposed burdens on the content of speech "raise[] the specter that the government may effectively drive certain ideas or viewpoints from the marketplace." *Simon & Schuster, Inc.*, 502 U.S. at 116. Therefore, content-based restrictions on speech "are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Nat'l Inst. of Family and Life Advocates v. Becerra*, 138 S. Ct. 2361, 2371 (2018) (quoting *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226 (2015)).

The merits analysis of this case is straightforward at this stage. The Complaint alleges that the SEC demands a gag order in exchange for every single settlement, and it alleges that this policy fails to serve any compelling (or important interest) and that it is not narrowly tailored. Am. Compl. ¶¶ 80–84. Cato has even alleged that the SEC possesses no evidence to justify its use of perpetual gag orders. *Id*. ¶¶ 85–86. The SEC seeks to rebut these allegations, *see* Mem. in Supp. at 25–30, but these arguments are simply premature: At this stage, the allegations of the Amended Complaint must be taken as true, and the allegations of the amended complaint make it impossible to conclude that the gag orders challenged here survive any level of First Amendment scrutiny.

The SEC fails to offer a compelling interest for including gag orders in all settlements. Instead, the agency describes an interest in using the allegations in enforcement-action complaints as a record of its investigation and as a "determination that a violation of the securities laws occurred." Mem. in Supp. at 26. Yet, it strains logic to argue that silencing the

accused proves that a violation of a securities law has occurred—particularly because the settling

defendants are required to admit no such thing. If the SEC's true interest was in determining that

a violation of a securities law occurred, it could require an express admission of wrongdoing

from the accused before settling any enforcement action. But by allowing the accused to settle

enforcement actions without admitting the truth of any of the SEC's allegations against them, the

SEC creates the exact type of public confusion it claims it would like to avoid. In the agency's

own words:

> If a settling defendant can deny the allegations in the complaint after consenting to a judgment . . . [i]t would create public confusion about the accuracy of the allegations in the complaint, which are resolved without a trial. It could also undermine confidence in the Commission's enforcement program by creating an unfair impression that there was no factual or legal basis for the Commission's enforcement action.

*See* Mem. in Supp. at 27. To be sure, outlawing criticism of the SEC's could be a mechanism to

preserve public confidence in the SEC's enforcement program, but that does not mean such a

restriction would be constitutional. If the SEC wants to avoid the public perception that it is

abusing its enforcement powers, it has less-restrictive alternatives available to it. It could insist

that defendants admit to certain operative facts, or it could publicly present evidence supporting

its allegations upon settlement. It could also avoid abusing its enforcement powers. To prevail in

this action, the SEC will need to produce evidence explaining why any less-speech-restrictive

approach would be ineffective in achieving its goals. *See, e.g.*, *United States v. Playboy Entm't*

*Grp.*, 529 U.S. 803, 816 (2000). It cannot do so in the context of a motion to dismiss.[2]

---

[2] When this case reaches the merits, the SEC will also, of course, need to explain why its policy is not fatally underinclusive. If settling defendants are (as the SEC says, *see* Mem. in Supp. at 29) allowed to make an unlimited number of *private* statements denying their guilt to an infinite number of individuals, it is difficult to understand how its policy prevents confusion about the accuracy of the SEC's allegations. Indeed, it is difficult to understand how its policy prevents anything other than public criticism of the SEC itself.

The SEC also argues that eliminating gag orders from settlements would reduce its efficiency. Mem. in Supp. at 27–28. Again, the amended complaint alleges otherwise. *E.g.* Am. Compl. ¶¶ 81, 85–86. Moreover, the SEC has no compelling interest in operating efficiently at the expense of First Amendment rights. By its own admission, the number of settlements that are implicated by this lawsuit "number in the thousands." Mem. in Supp. at 2. This means there are thousands of individuals who, regardless of the truth of the SEC's allegations against them, cannot speak publicly about those allegations. Silencing these individuals may well be efficient from the SEC's perspective, but that efficiency comes at a heavy cost to both the individuals' free-speech rights and the public's general interest in transparency in law enforcement. *E.g.*, *EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996) (noting the "strong presumption in favor of public access to judicial proceedings.") (citation omitted).

Finally, the SEC simply asserts that its gag orders are narrowly tailored because the accused: (1) are free to reject a proposed settlement and (2) may violate the gag order when testifying under oath or during "other legal proceedings in which the [SEC] is not a party." Mem. in Supp. at 29. Respectfully, the SEC's policy is that it requires a gag order as to *every single one* of its allegations in *every single one* of its settlements. Am. Compl. ¶¶ 22–24, 29. That is the opposite of a tailored policy; it is a blanket policy. The SEC may well be able to introduce evidence demonstrating that it has no viable options other than a blanket policy here, but its bare assertions about tailoring cannot be credited at this stage. Its motion should therefore be denied.

## <u>CONCLUSION</u>

For all these reasons, Defendants' motion to dismiss should be denied.

Date: May 24, 2019

Respectfully submitted,

/s/ Robert McNamara

Robert J. McNamara (VA Bar No. 73208)     Jaimie N. Cavanaugh (MN Bar No. 399960)*
INSTITUTE FOR JUSTICE                      INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900               520 Nicollet Mall, Suite 550
Arlington, Virginia 22203                  Minneapolis, Minnesota 55402
Telephone: (703) 682-9320                  Telephone: (612) 435-3451
Facsimile: (703) 682-9321                  Facsimile: (612) 435-5875
Email: rmcnamara@ij.org                    Email: jcavanaugh@ij.org
                                           Attorneys for Plaintiffs
                                           *admitted *pro hac vice*