UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CATO INSTITUTE,

                  Plaintiff,

       v.

UNITED STATES SECURITIES AND EXCHANGE
COMMISSION; JAY CLAYTON, in his official capacity as
Chairman of the U.S. Securities and Exchange Commission;
and VANESSA A. COUNTRYMAN,[*] in her official
capacity as Acting Secretary of the U.S. Securities and
Exchange Commission,

                  Defendants.

Civil Action No. 1:19-cv-00047-ABJ

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

---

[*] Vanessa A. Countryman was named Acting Secretary of the U.S. Securities and Exchange Commission effective March 11, 2019, when former SEC Secretary Brent J. Fields stepped down.

**TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................... 2

   I.   This Court should dismiss the complaint because Cato lacks both Article III and prudential standing. ................................................................................................................. 2

     A.   Cato has not shown Article III standing. ........................................................ 2

     B.   This Court should also dismiss for lack of prudential standing. ...................... 5

   II.   Principles of ripeness and comity require dismissal because this Court is not the proper venue to address any constitutional concerns.................................................... 7

   III.  The amended complaint fails to state a First Amendment claim. ..................................... 11

     A.   The settling defendants waived their First Amendment rights. ..................... 11

     B.   The "unconstitutional conditions" doctrine does not apply here. .................. 14

     C.   The no-deny provisions are constitutional under the First Amendment. ....... 18

CONCLUSION.............................................................................................................. 23

# TABLE OF AUTHORITIES

## CASES

*Am. Immigration Lawyers Ass'n v. Reno,*
    199 F.3d 1352 (D.C. Cir. 2000) ....................................................................................5, 7

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ..........................................................................................................19

*AT&T Techs., Inc. v. Communications Workers,*
    475 U.S. 643 (1986) ..........................................................................................................12

*Autor v. Pritzker,*
    740 F.3d 176 (D.C. Cir. 2014) .........................................................................................14

*Bennett v. Spear,*
    520 U.S. 154 (1997) ............................................................................................................3

*Bd. of Trustees of Hotel & Rest. Employees Local 25 v. Madison Hotel, Inc.,*
    97 F.3d 1479  (D.C. Cir. 1996) .......................................................................................10

*Blount v. SEC,*
    61 F.3d 938 (D.C. Cir. 1995) ...........................................................................................22

*Citizens for a Better Env't v. Gorsuch,*
    718 F.2d 1117 (D.C. Cir. 1983) .......................................................................................21

*City of Harper Woods Employees' Ret. Sys. v. Olver,*
    589 F.3d 1292 (D.C. Cir. 2009) .......................................................................................19

*Clapper v. Amnesty Int'l,*
    568 U.S. 398 (2013) ............................................................................................................2

*Democratic Nat'l Comm. v. Republican Nat'l Comm.,*
    673 F.3d 192 (3d Cir. 2012) ......................................................................................12, 17

*D.H. Overmyer Co. v. Frick Co.,*
    405 U.S. 174 (1972) ..........................................................................................................12

*Dolan v. City of Tigard,*
    512 U.S. 374 (1994) ............................................................................................................8

*In re Dow Jones,*
    842 F.2d 603 (2d Cir. 1988) .........................................................................................6, 19

*EEOC v. Nat'l Children's Ctr., Inc.,*
    98 F.3d  1406 (D.C. Cir. 1996) ........................................................................................21

*Erie Telecomms. v. Erie,*
    853 F.2d 1084 (3d Cir. 1988)..........................................................................................17

*FOCUS v. Allegheny Cty. Court of Common Pleas,*
    75 F.3d 834 (3d Cir. 1996)..............................................................................................6

*Freedman v. Maryland,*
    380 U.S. 51 (1965)..................................................................................................... 18-19

*FTC v. Actavis, Inc.,*
    570 U.S. 136 (2013)......................................................................................................21

*Gentile v. State Bar of Nev.,*
    501 U.S. 1030 (1991)....................................................................................................19

*In re George F. Nord Bldg. Corp.,*
    129 F.2d 173 (7th Cir. 1942) .......................................................................................13

*Heckler v. Cheney,*
    470 U.S. 821 (1985).................................................................................................. 21-22

*Keepseagle v. Vilsack,*
    815 F.3d 28 (D.C. Cir. 2016) .......................................................................................10

*Kleindienst v. Mandel,*
    408 U.S. 753 (1972)........................................................................................................5

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
    511 U.S. 375 (1994).......................................................................................................10

*Koontz v. St. John River Water Mgmt. Dist.,*
    570 U.S. 595 (2013)...................................................................................................8, 14

*Lake James Cmty. Volunteer Fire Dep't v. Burke Cty.,*
    149 F.3d 277 (4th Cir. 1998) .........................................................................12, 14, 15, 16

*Legal Services Corp. v Velazquez,*
    531 U.S. 533 (2001).......................................................................................................14

*Leonard v. Clark,*
    12 F.3d 885 (9th Cir. 1993) ..........................................................................................15

*Louisiana Pacific Corp. v. Beazer Materials & Servs., Inc.,*
    842 F. Supp. 1243 (E.D. Cal. 1994)......................................................................... 17-18

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) ................................................................ 2, 3, 6-7

*Malem Med., Ltd. v. Theos Med. Sys.,*
   2019 U.S. App. Lexis 4790 (9th Cir. Feb. 19, 2019) ............................. 13

*Nat'l Inst. of Family & Life Advocates v. Becerra,*
   138 S. Ct. 2361 (2018) .......................................................................... 18

*New York State Law Dep't v. FCC,*
   984 F.2d 1209 (D.C. Cir. 1993) ............................................................ 22

*O'Hare Truck Serv., Inc. v. City of Northlake,*
   518 U.S. 712 (1996) .............................................................................. 14

*Pansy v. Borough of Stradsburg,*
   23 F.3d 772 (3d Cir. 1994) ..................................................................... 6

*Papasan v. Allain,*
   478 U.S. 265 (1986) .............................................................................. 19

*Paragould Cablevision, Inc. v. City of Paragould,*
   930 F.2d 1310 (8th Cir. 1991) .............................................................. 15

*Pee Dee Health Care, P.A. v. Sanford,*
   509 F.3d 204 (4th Cir. 2007) ................................................................ 16

*Perry v. Sinderman,*
   408 U.S. 593 (1972) ........................................................................ 14, 15

*Pigford v. Veneman,*
   292 F.3d 918 (D.C. Cir. 2002) .............................................................. 10

*Pitts News v. Pappert,*
   379 F.3d 96 (3d Cir. 2004) ................................................................. 6-7

*Police Dep't of Chi. v. Mosley,*
   408 U.S. 92 (1972) ............................................................................... 18

*Power Ltd. v. Syntek Fin. Corp.,*
   121 F.3d 947 (5th Cir. 1997) .................................................................. 8

*Powers v. Ohio,*
   499 U.S. 400 (1991) ............................................................................... 7

iv

*Reid v. Hurwitz,*
    920 F.3d 828 (D.C. Cir. 2019) ........................................................................ 19

*Retail Digital Network, LLC v. Applesmith,*
    810 F.3d 638 (9th Cir. 2016) ........................................................................... 6

*Reynolds v. Roberts,*
    202 F.3d 1303 (11th Cir. 2000) ..................................................................... 14

*SEC v. Citigroup Global Mkts.,*
    752 F.3d 285 (2d Cir. 2014) ............................................................... 16, 20, 21

*SEC v. Clifton,*
    700 F.2d 744 (D.C. Cir. 1983) ................................................... 4, 13, 14, 20

*SEC v. Levine,*
    881 F.2d 1165 (2d Cir. 1989) ........................................................................ 14

*SEC v. Wang,*
    944 F.2d 80 (2d Cir. 1991) ............................................................................ 15

*Simon & Schuster, Inc. v. Members of the N.Y. State Crime Bd.,*
    502 U.S. 105 (1991) ................................................................................... 6, 18

*Singleton v. Wulff,*
    428 U.S. 106 (1976) ......................................................................................... 5

*Smyth v. Rivero,*
    282 F.3d 268 (4th Cir. 2002) ........................................................................ 10

*Snepp v. United States,*
    444 U.S. 507 (1980) ....................................................................................... 11

*Sourovelis v. City of Philadelphia,*
    103 F. Supp. 3d 694 (E.D. Pa. 2015) ........................................................... 17

*Southeastern Promotions, Ltd. v. Conrad,*
    420 U.S. 546 (1975) ....................................................................................... 18

*Stephens v. Cty. of Albemarle,*
    2005 U.S. Dist. LEXIS 38407 (W.D. Va. Dec. 22, 2005) ............................. 16

*Stephens v. Cty. of Albemarle,*
    524 F.3d 485 (4th Cir. 2008) ........................................................................ 16

*Texas v. United States,*
      523 U.S. 296 (1998) ................................................................................................ 8

*Thomas v. Union Carbide Agric. Prods. Co.,*
      473 U.S. 568 (1985) ................................................................................................ 8

*Town of Newton v. Rumery,*
      480 U.S. 386 (1987) .......................................................................................... 11-12

*United States v. Armour & Co.,*
      402 U.S. 673 (1971) ............................................................................ 10, 11, 14, 15

*United States v. Brown,*
      218 F.3d 415 (5th Cir. 2000) ............................................................................ 19, 21

*United States v. Int'l Bhd. of Teamsters,*
      931 F.2d 177 (2d Cir. 1991) ................................................................................. 12

*Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.,*
      425 U.S. 748 (1976) ................................................................................................ 5

*Wagner v. FEC,*
      793 F.3d 1 (D.C. Cir. 2015) ................................................................................. 22

*Williams v. Vukovich,*
      720 F.2d 909 (6th Cir. 1983) .................................................................... 11, 14, 20

*Williams-Yulee v. Fla. Bar,*
      135 S. Ct. 1656 (2015) ......................................................................................... 22

*Whitmore v. Arkansas,*
      495 U.S. 149 (1990) ............................................................................................ 3-4

*4:20 Communs., Inc. v. Paradigm Co.,*
      336 F.3d 775 (8th Cir. 2003) ................................................................................ 10

## STATUTES AND RULES

17 C.F.R. § 202.5(e) .........................................................................................................21

Federal Rule of Civil Procedure 12(b)(1) ........................................................................23

Federal Rule of Civil Procedure 12(b)(6) ..................................................................11, 23

Federal Rule of Civil Procedure 60(b) .........................................................................9, 10

# INTRODUCTION

Cato's response underscores why this Court lacks jurisdiction and should dismiss. Cato's arguments confirm that it lacks Article III standing because the alleged injury is entirely derivative of a speculative and conjectural injury to unnamed settling defendants not before the Court and that purported injury would not be redressed by a favorable ruling. Prudential standing is a separate obstacle Cato cannot overcome because it seeks to invalidate part of a judicially approved contract to which it was neither a party nor a beneficiary. A third jurisdictional issue is that the broad declaratory and injunctive relief Cato seeks—the invalidation of all past, present, and future no-deny provisions—would require this Court to invade the jurisdiction of every court that has entered consent judgments with the challenged provisions, contravening comity principles that compel respect for courts of coordinate jurisdiction.

Should the Court reach the merits, Cato's response demonstrates why its complaint fails to state a claim. The settling defendants voluntarily agreed to waive their First Amendment rights when they entered into the consent judgments, and Cato fails to grapple with the numerous decisions upholding waivers of constitutional rights, including First Amendment rights, in consent judgments and other settlements resolving litigation against the government. Instead, Cato cites the unconstitutional conditions doctrine, which does not apply here because courts— including the decisions Cato cites—have not adopted a per se rule that precludes entry of consent judgments containing waivers of constitutional rights. Even if this Court could somehow look past the waiver and view the no-deny provision as a judicially imposed restraint on speech, Cato has not rebutted the Commission's argument that the no-deny provisions are narrowly tailored to further compelling interests in the Commission's effective enforcement of the securities laws and the preservation of judicial resources.

## ARGUMENT

I.  **This Court should dismiss the complaint because Cato lacks both Article III and prudential standing.**

   **A.  Cato has not shown Article III standing.**

Cato's response confirms that it lacks Article III standing.  To begin with, Cato does not have standing "as a listener," Pl.'s Mem. of P. & A. in Opp'n to Defs.' Mot. to Dismiss (Opp'n) at 2, because it states—in its complaint, Am. Compl. ¶¶ 34-36, 42-48, and its brief (Opp'n 1)— that the settling defendants communicated with Cato about the enforcement actions against them. The no-deny provisions have not injured Cato "as a listener" because Cato concedes that it has been able to hear.

 Cato's theory of standing "as a speaker" is also flawed.  Opp'n 2.  The provisions do not directly affect Cato's ability to speak:  if it publishes denials of the settling defendants, it will face no sanction, remedy, or liability.  Mem. of P. & A. in Support of Defs.' Mot. to Dismiss (Mem.) 10-11.  Rather, it describes the injury as the unwillingness of settling defendants to let Cato publish their denials of allegations because of the "*prospect* of the SEC's enforcement" of the no-deny provisions.  Opp'n 3-4, 8 (emphasis added).  Thus, Cato concedes that any injury to it is derivative of alleged injuries that potentially could be incurred by unnamed third-parties not before the Court.  Courts have not "endorse[d] standing theories that rest on speculation about the decisions of independent actors."  *Clapper v. Amnesty Int'l*, 568 U.S. 398, 414 (2013). Rather, standing is "substantially more difficult" to show in those circumstances—"much more is needed"—because it turns "on the response of the regulated (or regulable) third party to the government action."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992) (internal quotation marks omitted).

Cato does not meet this standard.  Cato describes the injury the settling defendants "fear" as the possibility that the Commission will move to vacate the judgments pursuant to the terms of the consent and that the court will grant that relief, restoring the matter to the active docket. Opp'n 4; *see* Am. Compl. ¶ 37.  Thus, by Cato's argument, the only reason why the settling defendants would not publicize their denials through Cato is the risk of losing the settlement and proceeding to trial (which would entail, among other things, denying the allegation).  As a threshold matter, Cato does not identify any case holding that losing the benefits of a settlement after breaching its terms qualifies as an injury-in-fact—a "judicially cognizable interest." *Bennett v. Spear*, 520 U.S. 154, 167 (1997).  To accept Cato's theory is to accept the proposition that a party breaching a settlement agreement is injured because it is not allowed to retain the benefits of the bargain after failing to comply with its obligations.

But even if this constituted an injury-in-fact under *Lujan*, it is not concrete or imminent, which is fatal to standing.  Cato posits that the "prospect" of the Commission enforcing the provision is affecting speech, Opp'n 3, but ignores the series of independent, contingent events that would precede such an outcome.  If an unnamed defendant denies allegations in a book published by Cato, the Commission will have the option to move to vacate that defendant's consent judgment. Am. Compl. ¶ 37.  The court that entered the judgment will then decide whether to grant that relief.  Whether these two events will come to pass is a matter of speculation—the Commission may not move to vacate or the court may deny the motion if it is made.  And it is only if both occur that the settling defendants would face a consequence for denying the underlying allegations in the complaint.  Under controlling law, speculation about "possible future injury" does not "satisfy the requirements of Art. III," because a "threatened

injury must be certainly impending to constitute injury in fact." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (internal quotation marks omitted).

At times, Cato portrays the alleged injury not as the possibility of the Commission moving to reopen an enforcement action, but rather the Commission's issuance of "demands" for retractions when a settling defendant denies allegations publicly.  Opp'n 10, 17.  But Cato does not actually allege that any of the unnamed settling defendants received such letters, nor does it demonstrate that a letter demanding compliance with a contractual provision constitutes an injury-in-fact.  And this supposed injury is even more conjectural and hypothetical than the possibility of reopening a case—whether or not the Commission sends a letter demanding a retraction and whether or not the settling defendant who receives the letter actually responds by retracting the denial are all speculative future events that may never occur.

Cato also fails to answer the redressability problem the Commission identified.  Mem. 12-13.  The derivative injury alleged by Cato is that the settling defendants are unwilling to speak because of the *possibility* of the consent judgment being vacated in the future in the event of a breach.  But if this Court strikes down the no-deny provisions, that same possibility exists: the Commission may decide that it no longer wishes to settle in the face of public denials of the allegations; the Commission may move to vacate the consent judgment because a material term of the settlement is no longer in place; and a court may grant that relief and permit the Commission to go forward with its case.  *See SEC v. Clifton*, 700 F.2d 744, 746-47 (D.C. Cir. 1983) (describing how parties may seek to modify a consent judgment "if it is no longer equitable").  The supposed injury—the *possibility* that a court may return the parties to their original positions—exists even if this Court grants the injunctive and declaratory relief Cato seeks.

4

**B.  This Court should also dismiss for lack of prudential standing.**

In addition to the lack of Article III standing, which deprives this Court of jurisdiction, prudential standing should bar this action because Cato "seeks to vindicate the rights of unnamed third parties." *Am. Immigration Lawyers Ass'n v. Reno*, 199 F.3d 1352, 1357 (D.C. Cir. 2000); *Singleton v. Wulff*, 428 U.S. 106, 114 (1976) (internal quotes and citation omitted) ("Ordinarily, one may not claim standing in this Court to vindicate the constitutional rights of some third party.").  Cato's claims rest on the interests of third parties—the unnamed defendants who entered into consent judgments to which Cato was not a party or a beneficiary.  Mem. 13-15. Cato appears to recognize that a nonparty cannot bring "a lawsuit about a contract against the wishes of the actual parties to that contract," Opp'n 6, but that is precisely what Cato attempts here—it brought a lawsuit challenging consent judgments against the wishes of the Commission. And not just one contract—Cato asks this Court to strike down every no-deny provision in a Commission consent judgment, which may go against the wishes of a multitude of other settling defendants, as well as the Commission.

Cato tries to sidestep prudential standing by citing two categories of distinguishable cases.  Cato cites cases articulating a "right to receive" information even though, as explained before, Cato received information from the unnamed defendants, including the book manuscript. Am. Compl. ¶¶ 34-36, 42-48.  Cato cites *Kleindienst v. Mandel*, 408 U.S. 753, 762, 765 (1972), where a group of professors had standing to challenge a visa law denying them the ability to be in the "physical presence" of a foreign professor and engage in "sustained, face-to-face debate, discussion and questioning." *Id.* at 762 ("[T]hey wish to hear, speak, and debate with Mandel in person."); *see also Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748 (1976) (holding that consumers of prescription drugs had standing to challenge a

law of general applicability barring advertising of drug prices, which precluded receipt of pricing information).  And Cato cites cases where news agencies and other organizations had standing to challenge confidentiality orders that precluded trial participants, including attorneys, from discussing a case with those entities, which then could not receive the information from a willing speaker.  *FOCUS v. Allegheny Cty. Court of Common Pleas*, 75 F.3d 834, 838 (3d Cir. 1996); *Pansy v. Borough of Stradsburg*, 23 F.3d 772, 777 (3d Cir. 1994); *In re Dow Jones*, 842 F.2d 603, 606-07 (2d Cir. 1988).  These decisions do not aid Cato because, by its own allegations, the no-deny provisions did not prevent it from listening to denials of wrongdoing.

Cato also relies on a different group of cases that do not address third-party standing to challenge negotiated consent judgments but rather involve entities alleging that the application of a generally applicable law harmed them directly.  Opp'n 7-8.  In *Simon & Schuster, Inc. v. Members of the N.Y. State Crime Bd.*, 502 U.S. 105, 114-15 (1991), which does not discuss standing, the plaintiff was a publisher that violated a statute requiring it to hold in escrow revenue from book sales and consequently was ordered to turn money over to a government agency.  In *Pitts News v. Pappert*, 379 F.3d 96, 105-06 (3d Cir. 2004), a college newspaper had standing to challenge a law barring alcohol advertisements after the enforcement of that law resulted in a loss of $17,000 in revenue.  And in *Retail Digital Network, LLC v. Applesmith*, 810 F.3d 638, 647 (9th Cir. 2016), a company faced "criminal penalties" for facilitating advertisements by alcoholic beverage manufacturers.  The common element of these cases is a "publisher whose business conduct was directly regulated by a law imposing a content-based burden on commercial speech."  *Id.*[1]

---

[1] Cato implausibly contends that its "efforts to aid defendants" could somehow be considered "an intentional interference" with the consent judgment that could give rise to liability.  Opp'n 8. This is the essence of a "conjectural or hypothetical" injury.  *Lujan v. Defenders of Wildlife*, 504

By contrast, Cato's conduct is not directly regulated by the consent judgments at issue. Cato contends that *Pitt News* presents "the same scenario," but that is incorrect—the advertiser in Pitt News did not stop buying space in the newspaper because of concern that doing so would place it in breach of a consent judgment provision with a specified consequence.  Am. Compl. ¶ 37.  Unlike the newspaper in *Pitt News*, which challenged a law of general applicability on commercial speech grounds, Cato seeks to repudiate a settlement to which it was not a party or beneficiary.

There is no applicable exception for standing here, in part because there is no "'hindrance to the third party's ability to protect his or her own interests.'"  *Am. Immigration Lawyers Ass'n*, 199 F.3d at 1362, quoting *Powers v. Ohio*, 499 U.S. 400, 411 (1991).  Similar to the third-parties in *American Immigration Lawyers*, who were aware of the action allegedly causing an injury and had a strong incentive to challenge it, the settling defendants are aware of the no-deny provisions in their consent judgments, Am. Compl. ¶¶ 34-36, 42-48, and face no hindrance to raising legitimate arguments before the courts that entered the consent judgments.  *Id.* at 1363.

## II.   Principles of ripeness and comity require dismissal because this Court is not the proper venue to address any constitutional concerns.

Apart from standing, Cato cannot surmount another jurisdictional hurdle that arises because their request for relief is directed to the wrong court at the wrong time.  Mem. 15-20. Cato asks this Court to invalidate all past, present, and future no-deny provisions based on a supposed injury that would arise *if* a settling defendant denies allegations, *if* the Commission moves to vacate the judgment, and *if* a court grants that relief.  Am. Compl. 16, ¶¶ A, E.  Thus, the injury rests on speculation about future events, and a "claim is not ripe for adjudication if it

---

U.S. 555, 560-61 (1992).  Cato does not identify any case holding that the mere possibility of tort liability under a speculative claim that the Commission may never bring (and indeed has never brought) constitutes an injury for standing purposes.

rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998), quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985).

This ripeness problem is significant because Cato asks this Court to interfere with the ongoing jurisdiction of every other federal court that has entered a consent judgment containing a no-deny provision.  Cato tries to back off its sweeping demand for relief, but the suggestion that it is not asking "this Court to invalidate a judgment of another court," Opp'n 9, cannot be reconciled with its complaint, which asks this Court to enter a "declaratory judgment" that all no-deny provisions "in consent decrees" are "unenforceable," Am. Compl. 16, ¶ D.  If this Court invalidates the no-deny provision in the consent of the settling defendant who submitted a manuscript to Cato, it necessarily will rewrite the settlement approved by another court.  *Id*. ¶ C. It would be inappropriate for this Court to interfere with another court of "coordinate jurisdiction and equal rank," particularly when the settling defendants can seek relief in that court.  *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997).

Cato makes several failed attempts to solve this jurisdictional problem.  *First*, Cato cites Takings Clause cases where a plaintiff challenged an allegedly unconstitutional condition placed on a property owner's receipt of a permit.  Opp'n 10, citing *Koontz v. St. John River Water Mgmt. Dist.*, 570 U.S. 595, 609 (2013) and *Dolan v. City of Tigard*, 512 U.S. 374, 385 (1994). These cases, in which a property owner filed a direct action challenging the condition, do not support Cato's collateral attack on judgments entered by other courts.  For comity purposes, the key difference is that, unlike in *Koontz* and *Dolan*, in this instance there is another court with jurisdiction that can and should address any constitutional attacks on the no-deny provisions to

which the settling defendants agreed.  *See* Ex. 4, ¶ 15; Ex. 2, ¶ 15 (expressly retaining jurisdiction to enforce consent judgments).

     *Second*, Cato contends that this Court may nonetheless invade the jurisdiction of all courts that have entered consent judgments with no-deny provisions because Cato "was not a party to any of" the underlying actions and thus cannot bring a motion for relief under Federal Rule of Civil Procedure 60(b).  Opp'n 2.  This argument is a red herring because no one is suggesting that the proper path forward involves Cato "filing serial Rule 60 motions, all of which will be denied." *Id.*[2]  Rather, settling defendants are the appropriate parties to file Rule 60(b) motions with the courts that entered the judgments from which they seek relief.  This process— rather than Cato's sweeping effort to invalidate all past consent judgments—promotes respect for coordinate federal courts, permits case-by-case analysis, and avoids harming those settling defendants who have no interest in disrupting the consent judgments they previously negotiated.

     *Third*, Cato incorrectly asserts that comity and ripeness turn on whether a judgment entered by another court expressly incorporated the terms of a consent.  Opp'n 11-12.  As an initial matter, because Cato has not identified the settling defendants or submitted their consent judgments to this Court, it is uncertain whether the judgments do, in fact, incorporate the consents.  But that ultimately does not matter because the presence of incorporation language is irrelevant to the comity concerns raised by the Commission.  Under a consent judgment, "[t]he obligation to comply with a settlement's terms must be expressly made part of a court's order," and "[e]ither incorporation of the terms of the agreement *or* a separate provision retaining

---

[2]  The Commission never suggested that Cato was a proper party to bring a Rule 60(b) motion— the Commission did not state, as Cato misstates in its brief, that Cato "could simply move to re-open every single settlement the SEC has ever entered into." Opp'n 4.  Cato should not be able to seek relief from judgments to which it was not a party.  Rather, the Commission argued that *settling defendants* may seek relief from the court that entered the judgment.

jurisdiction over the agreement will suffice for this purpose." *Smyth v. Rivero*, 282 F.3d 268, 283 (4th Cir. 2002) (emphasis added), citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994). When a district court judgment expressly retains jurisdiction—and Cato does not dispute that Commission consent judgments include such provisions—the court may enforce the settlement whether or not the consent is expressly incorporated into the judgment. *Keepseagle v. Vilsack*, 815 F.3d 28, 32-33 (D.C. Cir. 2016); *Pigford v. Veneman*, 292 F.3d 918, 923 (D.C. Cir. 2002); *Bd. of Trustees of Hotel & Rest. Employees Local 25 v. Madison Hotel, Inc.*, 97 F.3d 1479, 1484 n.8 (D.C. Cir. 1996). Indeed, the retention of jurisdiction—the monitoring of a settlement—is the essence of what separates a consent judgment or consent decree from a private settlement. *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971).[3]

The Eighth Circuit decision cited by Cato is consistent with this precedent. Opp'n 12, citing *4:20 Communs., Inc. v. Paradigm Co.*, 336 F.3d 775 (8th Cir. 2003). In *4:20*, two private parties reached a settlement but the court's order of dismissal did not incorporate the terms of the settlement and reserved jurisdiction only for 90 days. *Id.* at 777. The court of appeals, applying *Kokkonen*, held that, after 90 days, the district court lacked jurisdiction to enforce the settlement. *Id.* at 778. And even though no party sought relief under Rule 60(b), the court analyzed the hypothetical question of whether the parties could have sought Rule 60(b) relief after the 90 days expired, answering in the negative. *Id.* at 779. The *4:20* decision is not on point because the judicial orders at issue here are not orders of dismissal—they are judgments—and the retention of jurisdiction has no end date.

---

[3] Of course, if Cato were right that a no-deny provision is not enforceable because it was not incorporated into a judgment, a settling defendant's speech could not be chilled by the possibility of the Commission moving to vacate the consent judgment. And that would further negate the (otherwise flawed) foundation of Cato's claim to standing.

Moreover, if there are disputes about a consent's legal effect when it is not expressly

incorporated into the judgment, they should be addressed by the court that entered the judgment

and retained jurisdiction. *See Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983) (stating

that consent judgments are "subject to continued judicial policing"). That court would be better

positioned to decide the effect of the incorporation language, if any, on constitutional issues than

this Court, which is being asked to decide the issue in the abstract.

## III.    The amended complaint fails to state a First Amendment claim.

This Court should not reach the merits because of the multiple jurisdictional flaws that

merit dismissal of the complaint. But should the Court address the First Amendment issues, it

should still dismiss under Rule 12(b)(6) because settling defendants waive their First

Amendment rights and there is no legitimate justification to disregard that waiver.

### A.  The settling defendants waived their First Amendment rights.

Cato cannot escape the dispositive fact that the settling defendants agreed to the no-deny

provisions and waived their constitutional rights. Mem. 21-25. Cato asks whether the

Commission "could *constitutionally demand*" such a waiver," Opp'n 14 (emphasis in original),

and the answer from the caselaw is clear: defendants can agree to waive their constitutional

rights, and the Commission can require such a waiver as part of settlements that resolve

enforcement actions. *Town of Newton v. Rumery*, 480 U.S. 386, 393 (1987). "Courts have

routinely enforced voluntary agreements with the government in which citizens have, for

example, given up the right to sue through releases and covenants not to sue the

government, *see Rumery*, 480 U.S. at 397-98; the right to speak regarding government secrets

through confidentiality agreements, *see Snepp v. United States*, 444 U.S. 507, 509 n.3 (1980)

(per curiam); [and] the right to a jury trial through agreements to submit litigable disputes

11

exclusively to arbitration, *see AT&T Techs., Inc. v. Communications Workers*, 475 U.S. 643, 648-49 (1986)." *Lake James Cmty. Volunteer Fire Dep't v. Burke Cty.*, 149 F.3d 277, 280 (4th Cir. 1998).

*Rumery* is instructive. An individual released Section 1983 claims against public officials in exchange for dismissal of criminal charges against him. *Id.* at 390. The Court enforced this agreement even as it acknowledged that defendants often "are required to make difficult choices that effectively waive constitutional rights." *Id.* at 393. The agreement, the Court held, reflected "a highly rational judgment that the certain benefits of escaping prosecution exceed the speculative benefits of prevailing in a civil action," particularly when "the benefits of the agreement to Rumery are obvious: he gained immunity from criminal prosecution in consideration of abandoning a civil suit that he may well have lost." *Id.* at 394; *see also D.H. Overmyer Co. v. Frick Co.*, 405 U.S. 174, 184-87 (1972) (due process rights "are subject to waiver").

There is no exception for First Amendment rights. Among the many cases applying *Rumery* and other decision to uphold waivers of First Amendment rights, the Second Circuit rejected a challenge to a consent decree provision involving the publication of union campaign literature, holding that even if the provision encroached upon First Amendment rights against compelled speech, the union waived any constitutional objection by consenting. *United States v. Int'l Bhd. of Teamsters*, 931 F.2d 177, 187-88 (2d Cir. 1991). The Third Circuit declined to vacate a consent decree signed by two political parties after one party argued that the judgment created an unconstitutional prior restraint, holding that the party "voluntarily agreed" to "abide by the very provisions that it now challenges as unconstitutional." *Democratic Nat'l Comm. v. Republican Nat'l Comm.*, 673 F.3d 192, 207 (3d Cir. 2012). And the Ninth Circuit enforced a

12

consent decree in which the parties agreed to a non-disparagement clause, rejecting one party's argument that the provision unconstitutionally restricted its right to petition, namely the filing of safety reports about the other's products. *Malem Med., Ltd. v. Theos Med. Sys.*, 2019 U.S. App. Lexis 4790, at *3 (9th Cir. Feb. 19, 2019). "One who has been a party to a proceeding wherein a consent decree has been entered and who has been a party to that consent, is in no position to claim that such decree restricts his freedom of speech. He has waived his right and given his consent to its limitations within the scope of that decree." *In re George F. Nord Bldg. Corp.*, 129 F.2d 173, 176 (7th Cir. 1942).

The settling defendants agreed to waive several rights when they settled, including their rights to deny the allegations as well as several trial-related due process rights. They did not have to settle—they were not required to offer to settle on terms acceptable to the Commission, and could have negotiated a different deal, or proceeded to trial. Cato does not allege or argue in its response that the waivers were not knowing and voluntary, which is unsurprising since Commission consents require settling defendants to affirm that they entered "into this Consent voluntarily." Ex. 4, ¶ 7; Ex. 2, ¶ 6.

While some defendants do not offer to settle on terms acceptable to the Commission and instead proceed to trial, these defendants signed the consents, avoiding the risks and uncertainty of trial in exchange for undertaking certain obligations and conditions, including an agreement not to deny the allegations in the complaint. *Armour*, 402 U.S. at 681-82 ("[I]n exchange for the saving of cost and elimination of risk," both sides gave "up something they might have won had they proceeded with the litigation."). The Commission, in turn, gave "up a number of advantages, "including the filing of findings of fact and court opinions clearly setting forth the reasons for the result." *Clifton*, 700 F.2d at 748.

For consent judgments to function, that compromise "must be respected." *Armour*, 402 U.S. at 682. "Once the judgment consented to has been entered as the judgment of the court, the court is by and large required to honor the terms agreed to by the defendant." *SEC v. Levine*, 881 F.2d 1165, 1181 (2d Cir. 1989). "Long standing precedent evinces a strong public policy against judicial writing of consent decrees," *Reynolds v. Roberts*, 202 F.3d 1303, 1312 (11th Cir. 2000), and consent judgments "should be strictly construed to preserve the bargained for position of the parties," *Williams*, 720 F.2d at 920. Courts are accordingly "reluctant to upset this balance of advantages and disadvantages and require the dissolution of such consent decrees years after they were originally entered." *Clifton*, 700 F.2d at 748.

### B.   The "unconstitutional conditions" doctrine does not apply here.

Cato's main response to this precedent is to invoke the "unconstitutional conditions" doctrine, Opp'n 13-17, but that doctrine does not preclude enforcement of the no-deny provisions. "[U]nconstitutional conditions cases involve a gratuitous governmental benefit of some kind," such as tax breaks, healthcare, permitting, and licenses. *Koontz*, 570 U.S. at 608. The benefits in the cases cited by Cato (Opp'n 13-14) include funding for legal services, *Legal Services Corp. v Velazquez*, 531 U.S. 533 (2001); government contracts, *O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712 (1996); state-college teaching positions, *Perry v. Sinderman*, 408 U.S. 593 (1972); and membership on a government advisory committee, *Autor v. Pritzker*, 740 F.3d 176 (D.C. Cir. 2014).

Courts have not construed consent judgments with government entities as a "benefit" such that a settlement conditioned on the waiver of constitutional rights cannot be enforced. The Fourth Circuit addressed the issue in *Lake James*, where an entity contended that even if its waiver of numerous constitutional rights, including First Amendment rights, was knowing and

14

voluntary, the unconstitutional conditions doctrine precluded the enforcement of those waivers. 149 F.3d at 282. The court disagreed, holding that that the unconstitutional conditions doctrine articulated in *Perry v. Sinderman* did "not categorically preclude parties from negotiating contractual relationships that include waivers of constitutional rights such as a covenant not to sue." *Id*; *see also Leonard v. Clark*, 12 F.3d 885, 891-92 (9th Cir. 1993) (upholding waiver of First Amendment rights in a labor agreement between a union and a municipality); *Paragould Cablevision, Inc. v. City of Paragould*, 930 F.2d 1310, 1315 (8th Cir. 1991) (upholding waiver of First Amendment rights as part of a cable franchise agreement with a municipality).

Cato's understanding of the unconstitutional conditions doctrine cannot be reconciled with decisions like *Lake James*, which permit enforcement of knowing waivers of constitutional rights. Consent judgments necessarily entail waivers of constitutional rights, particularly due process rights. *Armour*, 402 U.S. at 682 ("Because the defendant has, by the decree, waived his right to litigate the issues raised, a right guaranteed to him by the Due Process Clause, the conditions upon which he has given that waiver must be respected, and the instrument must be construed as it is written."). If the government cannot condition settlement on the waiver of constitutional rights, it cannot resolve cases by consent judgment, a proposition that runs counter to the "strong federal policy" favoring the "approval and enforcement" of consent judgments. *SEC v. Wang*, 944 F.2d 80, 85 (2d Cir. 1991).

Commission consent judgments often require a defendant to pay monetary remedies (such as disgorgement and penalties), to agree to be enjoined, or to be subject to some other remedial relief. While the meaning of "government benefit" has some flexibility, *Perry*, 408 U.S. at 597, paying money to the government, being enjoined, and facing collateral consequences from a settlement are not benefits by any measure. To be sure, a settling defendant

15

may gain something from a settlement in the sense of lowering the costs of litigation and eliminating risk of a verdict that is worse than the settlement, but that is not a gratuitous government benefit—it is the product of a negotiating process that defendant is always free to walk away from.  *See SEC v. Citigroup Global Mkts.*, 752 F.3d 285, 295-96 (2d Cir. 2014).

In the face of Supreme Court and appellate precedent upholding consent judgments that contain waivers of First Amendment rights, Cato cites three district court cases, none of which supports Cato's efforts to enlarge the unconstitutional conditions doctrine (and which are not binding on this Court in any event).  The first is a vacated decision in which a district court assessed whether a non-party had standing to challenge a settlement based on the theory that a condition restricting the speech of the settling defendant impeded the non-party's right to receive speech.  *Stephens v. Cty. of Albemarle*, 2005 U.S. Dist. LEXIS 38407, at *15-17 (W.D. Va. Dec. 22, 2005).  Even though the district court recognized that "the unconstitutional conditions doctrine could never apply as an absolute rule because all settlements between the government and citizen litigants involve a waiver of constitutional rights" and also recognized that judicial approval of settlements "will likely serve to mitigate the potential for abusive conditioning of governmental benefits in many cases," the court held that the non-parties had standing based on a "right to receive speech."  *Id*. at *19-21.  The Fourth Circuit disagreed—it held that the plaintiff lacked standing and ordered the district court to dismiss for lack of jurisdiction, vacating the decision upon which Cato relies.  *Stephens v. Cty. of Albemarle*, 524 F.3d 485, 486 (4th Cir. 2008).[4]

---

[4]  Moreover, a district court decision precluding a waiver of First Amendment rights in a settlement would be inconsistent with other Fourth Circuit decisions.  *See Pee Dee Health Care, P.A. v. Sanford*, 509 F.3d 204, 212 (4th Cir. 2007) ("[P]rocedural rights under § 1983, like other federal constitutional and statutory rights, are subject to voluntary waiver."); *Lake James*, 149 F.3d at 282.

The decision in *Sourovelis v. City of Philadelphia*, 103 F. Supp. 3d 694 (E.D. Pa. 2015) is even more inapposite.  A class challenged Philadelphia's civil forfeiture policies, including a "policy and practice of requiring real property owners to waive their statutory and constitutional rights in order to be let back into their property or have the forfeiture petition withdrawn." *Id.* at 698.  In holding that the class plaintiffs had stated a claim, the court focused on the fact that property owners had to surrender rights in order to reenter their homes and to agree that individuals, including relatives, would be indefinitely barred from entering their properties. *Id.* at 707.  Civil forfeiture proceedings and the ability to live in one's home have little in common with consent judgments in Commission enforcement actions.  *Sourovelis* cannot be read to preclude the enforcement of consent judgments with no-deny provisions, particularly since the Third Circuit has upheld voluntary waivers of First Amendment rights in more analogous settlements. *Democratic Nat'l Comm*, 673 F.3d at 205; *Erie Telecomms. v. Erie*, 853 F.2d 1084, 1096 (3d Cir. 1988) (upholding waiver of First Amendment rights because "constitutional rights, like rights and privileges of lesser importance, may be contractually waived where the facts and circumstances surrounding the waiver make it clear that the party foregoing its rights has done so of its own volition, with full understanding of the consequences of its waiver").

Finally, Cato cites *Louisiana Pacific Corp. v. Beazer Materials & Servs., Inc.*, 842 F. Supp. 1243 (E.D. Cal. 1994), but misstates its facts and the significance of its holding.  Opp'n 15.  There was no consent judgment in *Louisiana Pacific* that was challenged on a theory of unconstitutional conditions.  Rather, the issue was whether the EPA was precluded "from recovering its costs" of investigating a Superfund site after it insisted upon a settlement term, which was never agreed to, that "unlawfully conditioned LP's [Louisiana Pacific's] opportunity to conduct its own, potentially lower cost investigation, on the company's waiver of various due

17

process rights." *Id*. at 1246. The district court noted that "every offer of compromise involves a mutual surrender of a right of judicial review" that "is grounded on the resolution of presently contested issues relating either to the existence of liability or its extent, as measured by events which have already transpired," but that the issue facing the court "was of an entirely different character." *Id*. at 1250. The court found that "the nature of the Government's offer suffices to distinguish it from conventional offers of settlement." *Id*. at 1250. And under those unique facts, the court addressed the unconstitutional conditions doctrine as applied to "offers of settlement" and held that it did not preclude the government from recovering the investigation costs. *Id*. at 1251, 1255.

### C. The no-deny provisions are constitutional under the First Amendment.

The Court should not look beyond the voluntary waiver of First Amendment rights contained in the consent judgments. But even if no-deny provisions could be viewed as a judicially imposed restriction on speech against the speaker's will—rather than a voluntary agreement not to speak—they would be constitutional. Despite incorrectly labeling the no-deny provisions as "gag orders," Cato does not rely on any cases involving "gag orders" issued by judges. Instead, Cato cites decisions involving: a statute limiting criminals' ability to profit from books about their crimes, *Simon & Schuster*, 502 U.S. at 116; a law compelling "crisis pregnancy centers" to disclose specific information, *Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361 (2018); and an ordinance barring some, but not all, picketing next to schools, *Police Dep't of Chi. v. Mosley*, 408 U.S. 92 (1972). Opp'n 17-18. Cato ignores the differences in how courts have evaluated legislative/executive prior restraints, which may be constitutional if subject to certain forms of judicial review, versus "gag orders," which necessarily involve judicial review. *See Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 560 (1975); *Freedman v.*

18

*Maryland*, 380 U.S. 51, 58-59 (1965) (describing the judicial safeguards that are necessary for a prior-restraint licensing scheme to be constitutional).  For instance, Cato emphasizes the presumptive invalidity of "[c]ontent-based burdens on speech," Opp'n 18, but disregards that courts have upheld retraining orders directed at trial participants under a "less demanding standard than that established for regulation of the press" even though all such orders are content-based since they cover only certain speech by specific individuals.  *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1074 (1991); *United States v. Brown*, 218 F.3d 415, 425 (5th Cir. 2000); *In re Dow Jones & Co.*, 842 F.2d at 608.

The Commission explained in its opening brief that even if the Court does not dismiss the complaint on the basis of waiver, Cato has not stated a constitutional claim because the no-deny provisions are narrowly tailored to serve compelling public interests.  Mem. 26-30.  Cato's primary response is to cite its allegations of a First Amendment violation and claim that they "must be taken as true" at this stage of the case.  Opp'n 13, 18, 20, citing Am. Compl. ¶¶ 80-86.  That is incorrect: "[C]ourts do not accept as true a complaint's legal conclusions" on a motion to dismiss.  *Reid v. Hurwitz*, 920 F.3d 828, 837 (D.C. Cir. 2019), citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Nor are courts required to assume the truth of "a legal conclusion couched as a factual allegation."  *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *City of Harper Woods Employees' Ret. Sys. v. Olver*, 589 F.3d 1292, 1298 (D.C. Cir. 2009) (on a motion to dismiss, a court need not accept "legal conclusions cast in the form of factual allegations").

The Commission identified two interrelated, compelling interests.  Mem. 26-28.  The first is that when the Commission chooses to settle (as opposed to going to trial) and does not require the defendant to admit wrongdoing, the allegations in the complaint protect "the public by informing potential investors that a certain person has violated SEC rules in the past," identify

19

details of specific violations, and deter future wrongdoing by providing an example of violative conduct. *Clifton*, 700 F.2d at 748. Denial of those allegations after settlement would undermine these objectives and impair the authority of the court by implying that it approved a consent judgment for which there was no basis—an assertion that neither a court nor the Commission can readily respond to, other than by reopening the case pursuant to the express language of the no-deny provision. *See Williams*, 720 F.2d at 920 ("Judicial approval of a settlement agreement places the power and prestige of the court behind the compromise struck by the parties."); *Citigroup Global Mkts.*, 752 F.3d at 295 ("As part of its review [of a proposed consent judgment], the district court will necessarily establish that a factual basis exists for the proposed decree.").

Cato misconstrues the Commission's interest by arguing that allegations alone do not prove "that a violation of a securities law occurred." Opp'n 18-19. Of course a complaint is not proof, but that is beside the point—the filing of a complaint and the content of that complaint document the result of a Commission investigation that led to a determination by a majority of the Commissioners that a securities law violation occurred. Settling on a no-admit, no-deny basis does not create the type "of public confusion" that would exist if, as Cato desires, defendants could enter into a consent judgment without admissions and then deny the complaint on the way out of the courthouse. Cato suggests that instead of no-deny provisions, the Commission should be required to obtain "an express admission of wrongdoing" before settling, Opp'n 19, but the Second Circuit rejected this argument when it held that a district court could not "demand 'cold, hard, solid facts, established either by admissions or by trials,' as to the truth of the allegations in the complaint as a condition for approving the consent decree." *Citigroup Global Mkts.*, 752 F.3d at 295.

If the Commission had no choice but to proceed to trial or require admissions (which would increase the number of trials because defendants are usually unwilling to admit wrongdoing due to increased exposure in parallel private suits), another compelling interest would be implicated, namely preservation of judicial and agency resources.  Settling by consent allows the Commission to obtain an efficient result for the public interest and more rapidly return money to injured investors.  Mem. 27.  Moreover, "public policy favors the settlement of disputes," *FTC v. Actavis, Inc.*, 570 U.S. 136, 137 (2013), because "[n]ot only the parties, but the general public as well, benefit from the saving of time and money that results from the voluntary settlement of litigation."  *Citizens for a Better Env't v. Gorsuch*, 718 F.2d 1117, 1126 (D.C. Cir. 1983).[5]

The Commission also explained in its opening brief (Mem. 26-27) how the no-deny provisions are "narrowly drawn" to further these interests.  *Brown*, 218 F.3d at 425.  Cato sidesteps the tailoring of the *provisions* and instead critiques the Commission's *policy* as insufficiently tailored.  Opp'n 20.  But the policy of not permitting denials, as reflected in Rule 202.5(e), applies only when a defendant (or a respondent, in an administrative proceeding) offers to settle without admitting to wrongdoing, and the Commission accepts the settlement offer.  Such agreements are tailored to the facts and circumstances of each individual enforcement action.  *See Citigroup Global Mkts.*, 752 F.3d at 296 (stating that the decision whether to settle and what to settle for "rests squarely with the" Commission); *see also Heckler v. Cheney*, 470

---

[5] Cato emphasizes the "public's general interest in transparency in law enforcement," citing a case that applied the "presumption in favor of public access to judicial proceedings" to an order sealing a consent decree.  Opp'n 20; *EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d  1406, 1409 (D.C. Cir. 1996).  But a no-deny provision does not limit public access to the consent judgment, which is not under seal.

U.S. 821, 831-32 (1985); *New York State Law Dep't v. FCC*, 984 F.2d 1209, 1213-15 (D.C. Cir.

1993) (decision whether to bring a suit and whether to settle are committed to agency discretion).

The no-deny provisions themselves, as distinct from the policy that leads to their

negotiation, are also tailored, because they affect only one type of speech related to the specific

interests at stake—not undermining the factual bases for the settlement, promoting judicial

resolution by compromise, and increasing the efficiency of the Commission's use of its

resources.  Cato portrays the no-deny provisions as "outlawing criticism" of the Commission, but

that is inaccurate.  *E.g.*, Opp'n 19.  Settling defendants can criticize the Commission, and its

enforcement program, in myriad ways through myriad channels without breaching the no-deny

provision, so long as that criticism does not entail denying the allegations in the complaint,

which they agreed not to do in order to end the case against them.

Finally, Cato suggests that the provisions are "fatally underinclusive," Opp'n 19 n.2,

because a defendant may deny allegations privately or in non-Commission proceedings without

breaching the consent.  Am. Compl. ¶ 37. "To put it most bluntly: 'The First Amendment does

not require the government to curtail as much speech as may conceivably serve its goals.'"

*Wagner v. FEC*, 793 F.3d 1, 27 (D.C. Cir. 2015) (*en banc*), quoting *Blount v. SEC*, 61 F.3d 938,

946 (D.C. Cir. 1995).  The fact that the no-deny provisions allow for *more* speech—specifically,

private denials of allegations, including to Cato, and denials in related litigation not involving the

Commission—does not undermine their constitutionality.  *Williams-Yulee v. Fla. Bar*, 135 S. Ct.

1656, 1668 (2015) (declining to strike down a law for "abridging *too little* speech" because the

Court has "upheld laws—even under strict scrutiny—that conceivably could have restricted even

greater amounts of speech in service of their stated interests").

## CONCLUSION

This Court should dismiss the amended complaint under Rule 12(b)(1) for lack of subject

matter jurisdiction and under Rule 12(b)(6) for failure to state a claim.

Dated:  June 7, 2019                    Respectfully submitted,

   By:   */s/  Matthew S. Ferguson*
MATTHEW S. FERGUSON
Senior Counsel
MELINDA HARDY
Assistant General Counsel
JEFFREY A. BERGER
Senior Litigation Counsel

U.S. Securities and Exchange Commission
Office of the General Counsel
100 F Street NE
Washington, DC 20549

FergusonMA@sec.gov
202-551-3840 (Ferguson)
Fax: 202-772-9263

## CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2019, I served the foregoing Reply Memorandum in

Support of Defendants' Motion to Dismiss upon the counsel for Plaintiff via ECF.


_/s/  Matthew S. Ferguson_
MATTHEW S. FERGUSON
Senior Counsel
U.S. Securities and Exchange Commission
Office of the General Counsel
100 F Street NE
Washington, DC 20549
FergusonMA@sec.gov
202-551-3840
Fax: 202-772-9263